### In re QUALITY PLASTICS, INC., Debtor.

### Richard REMES, Trustee/Plaintiff,

### v.

### Gary YEOMANS, Defendant.

**Bankruptcy No. HK 82 1617.**
**Adv. No. 83 0955.**

United States Bankruptcy Court,
W.D. Michigan.

June 21, 1984.

David Davidoff, Kalamazoo, Mich., for trustee/plaintiff Richard Remes.

Richard N. LaFlamme, Jackson, Mich., for defendant Gary Yeomans.

### OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

### "NEW VALUE" EXCEPTION TO PREFERENCE ACTION

Richard Remes, the trustee herein, commenced this adversary proceeding to avoid alleged preferential transfers under 11 U.S.C. § 547(b) made to Gary A. Yeomans. Mr. Yeomans seeks summary judgment on the defense embodied in 11 U.S.C. § 547(c)(4) that he gave "new value" to or for the benefit of the debtor after the alleged preferential transfers were made to him.

The facts are not in dispute. Gary Yeomans is the President and principal shareholder of the debtor, Quality Plastics, Inc. Within one year of the date of the filing of the debtor's bankruptcy petition[1] the following transfers were admittedly made to Mr. Yeomans:

| | |
|---|---|
| September 17, 1981 | $3,000 |
| October 6, 1981 | $3,000 |
| November 13, 1981 | $2,500 |
| December 15, 1981 | $2,000 |
| | $10,500 |

---

1. Mr. Yeomans is an insider under 11 U.S.C. § 101(25)(B). While the defendant denies that he had reasonable cause to believe that the debtor was insolvent at the time of the transfers under 11 U.S.C. § 547(b)(4)(B)(ii), the Court will assume that this requirement has been met in considering the defendant's summary judgment motion. *See Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962). Thus, for the purposes of this proceeding the one year preference period under § 547(b)(4)(B) will be utilized.

These payments were made pursuant to two equipment leases between Mr. Yeomans as lessor and the debtor as lessee. Under the terms of the first agreement executed in November, 1979, debtor leased a Plastics Injection Molding Machine for a 60 month term at a rental of $2,509.08 per month. Under a second agreement executed in August, 1980, debtor leased a Ai-mac Hot Stamping Machine for a 12 month term at a rental of $.03 per hot stamped part. This lease is silent as to when rentals were to be paid. The new value is claimed to be the debtor's continued use of the leased equipment despite accrual and nonpayment of rent as follows:

| | | | |
|---|---|---|---|
| between Sept. 18, 1981 – Oct. 6, 1981 | $ 958.20 | (1980 lease) |
| between Oct. 7, 1981 – Nov. 13, 1981 | $ 1,326.90 | (1980 lease) |
| between Nov. 14, 1981 – Dec. 15, 1981 | $ 997.68 | (1980 lease) |
| between Dec. 16, 1981 – May 14, 1982 | $ 691.80 | (1980 lease) |
| between Dec. 16, 1981 – May 14, 1982 | $12,545.40 | (1979 lease) |
| | $16,519.98 | |

For the purposes of the defendant's summary judgment motion, assuming but not deciding that the trustee has met the preference requirements set forth in 11 U.S.C. § 547(b), the sole issue before the Court is whether unpaid rentals that accrue to a particular creditor after preferential transfers are allegedly made to him may be offset as "new value" against the amount transferred pursuant to 11 U.S.C. § 547(c)(4).

Section 547(c)(4), the so-called "subsequent advance rule" provides:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

Thus, three requirements must be met before the Court could grant the defendant's summary judgment motion. First, the creditor must extend new value after the challenged payment is made to him. "New value" is defined in § 547(a)(2) as "money or money's worth in goods, services, *or new credit,* ... but does not include an obligation substituted for an existing obligation." (emphasis added) Second, the new value must be unsecured. Third, the new value must go unpaid. *See In re Bishop,* 17 B.R. 180, 183 (Bankr.N.D.Ga. 1982). There is no question that various rental obligations due to the defendant between September, 1981 and May, 1982, are unsecured and unpaid.[2]

The purpose of the § 547(c)(4) exception is to "insulate[ ] from preference attack a transfer to a creditor to the extent that the creditor thereafter replenishes the estate." Levin, *An Introduction to the Trustee's Avoiding Powers,* 53 Am.Bankr.L.J. 173, 187 (1979). In such a situation, other creditors would not be harmed to the extent of the offset and the fundamental goal of equality of distribution is preserved.

In support of his contention that no new value has been extended by the defendant in this case, the trustee relies primarily on the case of *In re Duffy,* 3 B.R. 263 (Bankr. S.D.N.Y.1980). In *Duffy,* the trustee attempted to avoid as preferential a $400 payment made by the debtor to Avis Rent A Car System, Inc. pursuant to a written lease of an automobile. Avis argued that it

[2] While the defendant originally listed his secured status as an affirmative defense, the defendant subsequently filed an affidavit by Mark Johnson, Controller of Quality Plastics, Inc., stating that the lease payments at issue were not secured by an otherwise unavoidable security interest. Obviously, the trustee does not contest this point.

gave new value as a contemporaneous exchange under § 547(c)(1) because of its forebearance from repossessing the leased vehicle. In denying this argument the Court stated:

> In the instant case, a forebearance by Avis from repossessing the rented vehicle does not enhance the value of the debtor's estate. The debtor's continued right to drive the rented vehicle is not an asset of benefit to his creditors that could reasonably offset the diminution of his estate upon the payment of the $400.

*Supra* at 266. *See also In re Rustia*, 20 B.R. 131 (Bankr.S.D.N.Y.1982) (availability of an additional line of credit that has not been utilized does not enhance the estate so as to be an economic solace to other creditors.)

Unlike the situation in *Duffy*, the two machines here at issue were utilized in the debtor's business to produce parts which helped augment the debtor's estate to the benefit of the other creditors. In this regard, Mr. Yeomans filed an uncontested affidavit [3] that in the period from September 18, 1981, to May 14, 1982, the Plastics Injection Molding Machine produced injection molded parts for speakers which were then hot-stamped by the Aimac Hot Stamping Machine.

At a hearing held on this matter on January 20, 1984, the trustee expressed concern that without knowledge of the specific number of parts produced during the relevant period and the worth of each unit produced it is impossible to determine the extent to which the estate has been benefited.[4] While this argument does have some appeal, analytically the situation here

present is not much different than if Mr. Yeomans had loaned the debtor $16,519.98 to pay subsequently accruing rentals. *Assuming arguendo* that the two machines in question earned for the estate less than their rental price, nevertheless the lender should not be saddled with this deficiency and bear the risks of the debtor's operations. In short, the appropriate measure of credit extended by the defendant in this case is the amount at which the machines were rented rather than their productivity.

Having determined that value has been provided the estate by Mr. Yeomans to the extent of the accrued but unpaid post-transfer rentals, it must be determined whether this value was "new" credit or merely "an obligation substituted for an existing obligation" under the language of § 547(a)(2).

The trustee claims that the debtor incurred its obligation to pay rent in full on the date the lease agreements were executed, not monthly as the lease progressed. Under this view, since the debtor had a preexisting obligation, extention of credit merely constituted a substitution of obligations, i.e., the obligation to pay for the accruing rentals at a future date rather than timely meeting the rental payments as they arose.[5]

Congress did not define when a debt is incurred. However, courts and commentators alike have recognized in interpreting § 547(c)(2) that a debt is incurred when the debtor first becomes legally bound to pay. *See e.g. In re Iowa Premium Service Co., Inc.*, 695 F.2d 1109, 1111 (8th Cir.1982); *Barash v. Public Finance Corp.*, 658 F.2d

---

**3.** 6 Moore's Federal Practice ¶ 56.11[1–2] at 56–199 provides:

> Summary judgment procedure does not contemplate a trial by affidavits. Nevertheless Rule 56 authorized the use of affidavits by both the moving and the opposing party for the purpose of establishing that there is or is not a triable issue of fact.

**4.** The trustee has cited to the Court *In re Lario*, 36 B.R. 582, 584 (Bankr.S.D.Ohio 1983), wherein the Court viewed the added value to the estate by a creditor's forebearance from foreclosure upon a restaurant as "thoroughly specula-

tive." Unlike the landlord in *Lario*, Mr. Yeomans claims added value to the estate in the nature of accruing post-transfer rentals which supplies a concrete basis upon which to assess benefit to the general creditor body.

**5.** Again the trustee cites *In re Duffy, supra* for its interpretation of § 547(a)(2). *Duffy* did not discuss when the debtor became legally obligated to pay rentals but apparently assumed that such an obligation arose in full upon signing the lease agreements. To the extent that *Duffy* is inconsistent with my interpretation of § 547(a)(2) I choose not to follow it.

504, 512 (7th Cir.1981); *In re Mc Cormick,* 5 B.R. 726, 731 (Bankr.N.D.Ohio 1980); Levin, *An Introduction to the Trustee's Avoiding Powers, supra* at 187.

In determining the issues of antecedent indebtedness and the § 547(c)(1) and (c)(2) exceptions, the bankruptcy court in *In re Mindy's, Inc.,* 17 B.R. 177, 179 (Bankr.S.D. Ohio 1982) stated:

> The Court declines to follow the rationale advanced by the trustee that the debt was incurred at the time of the original signing of the lease obligations. The total lease obligation, at that point in time, was not due and payable—it was only due and payable as the lease term progressed and as the lessee occupied the premises subject to the leasehold in accordance with the terms of the lease.

The Eighth Circuit applied this rationale in holding that a debt for interest payments is incurred on the date on which the interest accrues, not the date the note is executed. *In re Iowa Premium Service Co., Inc., supra.* In so doing, the majority opinion distinguished several cases cited by the trustee in our case including *In re Barash, supra; In re Mc Cormick, supra;* and *In re Bowen,* 3 B.R. 617 (Bankr.E.D.Tenn. 1980). The dissenting judges, while not questioning the rationale or result of *In re Mindy's* nevertheless believed that "interest payments on an unsecured note are not analogous to rent payments." *Supra* at 1114. *See also In re Clothes, Inc.,* 35 B.R. 489, 491–92 (Bankr.D.N.D.1983) which was bound by the *Iowa Premium Service* decision.

The case most directly on point for our purposes is *In re Garland,* 28 B.R. 87 (Bankr.E.D.Mo.1983), also from the Eighth Circuit. In *Garland* the debtor leased real property for a five year term payable in monthly installments in advance on the first day of each month. In considering the "new value" exception under § 547(c)(4) the Court applied the rationale in *Iowa Premium Service* and indicated that delinquencies in rent, whether pre-or post petition, that accrued subsequent to allegedly preferential transfers could be offset as "new value" against such transfers.

As previously noted, the 1980 lease between the debtor and the defendant does not indicate when rentals are to be paid. Such a determination is unnecessary however. The 1979 lease clearly delineates that rentals were to be payable monthly and the rental delinquencies thereunder that accrued after the last alleged preferential transfer on December 15, 1981, exceeds the $10,500 total amount transferred to the defendant. Adopting the rationale of the above-cited cases, at the time transfers were made to Mr. Yeomans there was no existing obligation to pay future months rent, thus I find the credit given for these rentals by the defendant constitutes "new value" under § 547(c)(4). Accordingly, the defendant's motion for summary judgment is granted, each party to bear his own costs and fees incurred herein.