**In re FULGHUM CONSTRUCTION CORPORATION, Debtor.**

**Robert H. WALDSCHMIDT, Trustee, Plaintiff,**

**v.**

**Harry RANIER, Algin Nolan, and Ranier and Associates, Defendants.**

**Bankruptcy No. 380–00235. Adv. No. 380–0081.**

United States Bankruptcy Court, M.D. Tennessee.

Dec. 8, 1984.

Robert H. Waldschmidt, Nashville, Tenn., trustee.

C. Kinian Cosner, Jr., Atty., Nashville, Tenn., for trustee.

John H. Bailey, III, L. Wearen Hughes, Nashville, Tenn., for defendants.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This case has been referred to this court by the United States District Court for the Middle District of Tennessee for action consistent with the Sixth Circuit Court of Appeals decision in this matter. The trustee has moved for the entry of judgment against the defendant, Ranier and Associates (hereinafter referred to as the "defendant"), for preferential transfers totaling $1,042,365.01 plus interest. Three categories of objections have been raised by the defendant in response to the trustee's motion. First, the defendant has alleged that the preferential payments in question are exempted from avoidance pursuant to 11 U.S.C. § 547(c)(1) and (2) (West 1979). Second, the defendant has raised a series of objections relating to the trustee's computation of the amount of preferential transfers and the applicability of 11 U.S.C. § 547(c)(4) (West 1979). Finally, the de-

fendant has objected to the trustee's claim for prejudgment interest. Upon consideration of the evidence presented, briefs of the parties, and the entire record, this court concludes that the trustee is entitled to judgment in the amount of $197,432.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

On February 6, 1980, this adversary proceeding was filed by the trustee against the defendant, Ranier and Associates. Ranier and Associates was the sole shareholder of Fulghum Construction Corporation, the debtor, and engaged in numerous transactions with the debtor in the year preceding the debtor's bankruptcy filing. The trustee sought to set aside a sale of equipment from the debtor to the defendant and sought to avoid as preferential transfers certain monetary transactions which occurred between the two parties in 1979. This matter was tried before the bankruptcy court on May 22 and 23, 1980.

On November 28, 1980, the court decided that the defendant had not received preferential transfers from the debtor. Although the court found that the five elements of 11 U.S.C. § 547(b) were proven by the trustee, the court concluded that to the extent preferential transfers received by the defendant were offset by extensions of credit that resulted in a net increase in the debtor's estate, such transfers were not avoidable. This "net result rule," which had developed under the former Bankruptcy Act, was held by the court to be implicit in the language of 11 U.S.C. § 547(b)(5) (West 1979). In applying this rule of law, the court determined that the net effect of all the transactions between the debtor and the defendant resulted in an increase to the debtor's estate of $387,844.16.

Despite the court's reliance on the "net result rule", it made findings of fact and conclusions of law on other aspects of the trustee's claim. It was noted that the transfers in question, for the most part, consisted of repayment by the debtor to the defendant for sums the defendant had advanced to cover the debtor's payroll expenses. The defendant advanced these funds when the debtor was attempting to complete four contracts but was "always hurting for money".

Based upon the evidence presented, the court also determined that 11 U.S.C. § 547(c)(1) and (2) (West 1979) defenses were not generally available to the defendant. It found that the transfers at issue were on account of an antecedent debt owed by the debtor, and were not substantially contemporaneous exchanges for new value as defined within § 547(c)(1). Furthermore, since the payments at issue in this proceeding were not made to the debtor's suppliers and were not in the nature of regular business expenses, the court held that they were not subject to the exception contemplated by § 547(c)(2). *Waldschmidt v. Ranier (In re Fulghum Construction Company)*, 7 B.R. 629, 647 n. 5 (Bankr.M. D.Tenn.1980).

The trustee appealed the bankruptcy court's judgment to the United States District Court for the Middle District of Tennessee on three issues, including the issue of preferential transfers. Upon the district court's affirmance of the bankruptcy court's decision, the trustee appealed the case to the United States Sixth Circuit Court of Appeals. *In re Fulghum Construction Corporation*, 14 B.R. 293 (M.D. Tenn.1981).

The circuit court held that both the bankruptcy court and the reviewing district court improperly applied the "net result rule". It observed that the "net result rule," established under the Bankruptcy Act, was codified in 11 U.S.C. § 547(c)(4) (West 1979), and to judicially interpose this rule into 11 U.S.C. § 547(b)(5) (West 1979) was improper legislation by judicial decree. Accordingly, the Sixth Circuit vacated the judgment of the district court dismissing the trustee's complaint to avoid preferential transfers from the debtor to the defendant and remanded the case for further proceedings. The district court judgment was affirmed in all other respects. *Waldschmidt v. Ranier (In re Fulghum*

*Construction Corporation)*, 706 F.2d 171 (6th Cir.1983). By order of the district court, the case has been referred to this court for action consistent with the Sixth Circuit decision.

## I.

The threshold issue this court must address is whether or not the defendant can exempt the transfers in question from avoidance pursuant to either 11 U.S.C. § 547(c)(1) (West 1979) or 11 U.S.C. § 547(c)(2) (West 1979). The trustee asserts that this court, in its original decision in this matter, held that the defendants had failed to establish either a (c)(1) or a (c)(2) defense. The defendant counters that this court analyzed the defendant's (c)(1) and (c)(2) defenses only after stating that such an analysis was unnecessary to support the court's holding.

The defendant's (c)(1) and (c)(2) defenses were dealt with in footnote 5 of this court's original decision. *Waldschmidt v. Ranier (In re Fulghum Construction Company)*, 7 B.R. 629, 647 n. 5. (Bankr.M.D.Tenn. 1980). In relevant part, the court held that "... none of the transfers were substantially contemporaneous exchanges for new value" and that since "... [t]he payments herein at issue were not made to the debtor's suppliers and were not in the nature of regular business expenses," the transfers in issue were "... not subject to the exception contemplated by § 547(c)(2)." Upon further consideration of the record and applicable authority, the court is convinced that for most of the transactions in question neither defense is available to the defendant.[1]

■ In order to establish a § 547(c)(1) exception, the defendant must prove two essential elements. *Ray v. Security Mutual Finance Corporation (In re Arnett)*, 731 F.2d 358 (6th Cir.1984); *Ray v. Gulf Oil Products (In re Blanton Smith Corporation)*, B.R. 303, 307 n. 6 (Bankr.M.D. Tenn.1984). *See also Waldschmidt v. Miracle Motors (In re Haynes)*, 28 B.R. 136 (Bankr.M.D.Tenn.1983). The defendant must establish not only that a substantially contemporaneous exchange for new value occurred but also that the debtor and creditor intended the transaction to be a contemporaneous exchange.[2]

For the most part, the transactions between the defendant and the debtor were in the nature of sporadic advances to cover payroll overdrafts. Since the debtor was in the business of constructing pipe lines (Trial Transcript, p. 44), it would at times incur large operating expenses prior to receiving payment for its construction work. Mr. Nolan, a partner of the defendant, was instructed by Mr. Ranier "not to let the bank send back payroll checks" of the debtor. When Mr. Nolan was notified that the debtor was experiencing cash flow difficulties, he would loan the debtor funds. These funds were paid to the debtor with the anticipation that they would be repaid when the debtor received payment for its construction projects. Upon an analysis of the summary of transactions between the two parties, the court has determined that the transactions in issue were not substantially contemporaneous and were not intended to be contemporaneous. They were in fact loans from the defendant to the debtor which were to be repaid at sometime in the future.

■ In this case, to establish an exception within 11 U.S.C. § 547(c)(2) (West

---

**1.** In the second section of this court's decision, the court analyzes a few transactions between the parties which were not advances by the defendant to the debtor to cover payroll overdrafts. Since these transactions differ from the majority of the transactions between the parties, the court must consider a different set of facts to determine whether or not § 547(c)(1) or § 547(c)(2) apply.

**2.** 11 U.S.C. § 547(c)(1) (West 1979) provides in relevant part:

"(c) The trustee may not avoid under this section a transfer—
(1) to the extent that such transfer was—
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange..."

1979), the defendant must establish that payments have been "... (1) made in payment of a debt incurred in the ordinary course of business of the debtor and transferee, (2) made not later than forty-five days after the debt was incurred, (3) made in the ordinary course of business of the debtor and the transferee, and (4) made according to ordinary business terms."[3] *Flatau v. Marathon Oil Company (In re Craig Oil Co.)*, 31 B.R. 402, 405 (Bankr.M.D.Ga.1983). One of the key elements a defendant must establish in order to avail itself of a § 547(c)(2) exception is that the debt was incurred and payment was received within the ordinary course of business.

The legislative history of § 547(c)(2) provides that the "... purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors ..." S.R. 989, 95th Cong.2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5874. While this section protects ordinary trade credit transactions which are kept current, it was not intended to include transactions outside the normal course of either the debtor's or its creditors' business. *Cohen v. Kern (In re Kennesaw Mint, Inc.)*, 32 B.R. 799, 804 (Bankr.N.D.Ga.1983); *Weill v. Southern Credit Union (In re Bowen)*, 3 B.R. 617 (Bankr.E.D.Tenn.1980).

The proof in this case established that in conducting its pipe line construction business the debtor would require fairly large amounts of capital in order to obtain job bids and in order to cover overhead expenses between the time a job began and the time payment was received for that particular job. After Mr. Ranier purchased the debtor in October of 1977, Mr. Fulghum, the president of the debtor, testified that the company experienced difficulties due to the fact that it was undercapitalized. (Trial transcript, p. 58 *et. seq.*). In the summer of 1979, the situation became so desperate that the defendant advanced funds to the debtor in order to allow the debtor to meet daily payroll expenses. (Trial transcript, p. 362 *et. seq.*). Although these transactions occurred with some frequency during a six-month period beginning approximately June 1, 1979, they were not transactions within the normal operation of the debtor's business. These short-term loans were made by the defendant to the debtor in order to allow the debtor to maintain operations despite its capitalization problems. Such transactions are not excepted from avoidance under the "ordinary course of business" exception found within § 547(c)(2).[4]

## II.

After determining that a majority of the transactions between the debtor and the

---

3. 11 U.S.C. § 547(c)(2) (West 1979) provides in relevant part:

    "(c) The trustee may not avoid under this section a transfer—

    . . . . .

    (2) to the extent that such transfer was—
    (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
    (B) made not later than 45 days after such debt was incurred;
    (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
    (D) made according to ordinary business terms; ..."

4. The defendant has cited a line of decisions to the court which hold that payment of overdraft charges incurred pursuant to an agreement with the debtor's bank are transactions within the

ordinary course of business pursuant to (c)(2). *Butz v. Bancohio National Bank*, 31 B.R. 893 (Bankr.S.D.Ohio 1983); *Pfau v. First National Bank (In re Schmidt)*, 26 B.R. 89 (Bankr.D.Minn.1982); *Iowa Premium Service Company, Inc. v. First National Bank of St. Louis*, 12 B.R. 597 (Bankr.S.D.Iowa 1981). Unlike the present case, the cases relied upon by the defendant dealt with normal, established financial transactions between a debtor and a lending institution. Since the banks are in the business of providing overdraft credit, it is not unusual to find these transactions nor is it surprising that courts have excepted them from avoidance under exception (c)(2). However, short-term loans between two related companies in order to combat cash flow difficulties related to undercapitalization problems are not analogous to these types of transactions.

defendant cannot be excepted from avoidance, it is necessary for the court to determine the exact amount of preferential payments received by the defendant. The parties have raised three categories of issues which this court must address. First, the parties disagree as to which summary of transactions presented at trial should be used by the court in determining the amounts of preferential payments. Second, the court must determine whether or not 11 U.S.C. § 547(c)(1) or § 547(c)(2) (West 1979) applies to any of the transactions which were not advances by the defendant to cover payroll overdrafts. Finally, the court must determine which payments made by the defendant to the debtor may be set off against prior preferential transfers pursuant to 11 U.S.C. § 547(c)(4) (West 1979).

At trial, both the trustee and the defendant proffered exhibits summarizing the transactions between the two parties during the relevant time frame. The trustee offered Exhibit 24 which he had derived from the debtor's general account ledger and payroll account ledger at Mt. Sterling National Bank. The defendants proffered Exhibit 25 which was a summary of the transactions between the parties derived from a comparison between the general ledger of the debtor and the general ledger of the defendant. Since this court in its original decision failed to make a finding on this point, this court has found it necessary to examine the record.

At trial, the trustee admitted that his summary was incomplete, stating that "... I think the ledger is the best evidence." (Trial transcript, p. 274 *et. seq.*) Since the defendant's summary was carefully derived from the general ledger of both the debtor and the defendant, the court holds that it provides an accurate illustration of most of the transactions between the parties. With the exception of the transactions followed by "(A)", "(B)", "(C)", and "(D)", Exhibit 25 provided as follows:

| 1979 | PREFERENCE | NEW VALUE | NET PREFERENCE |
|---|---|---|---|
| 5/20 | 5,900.00 | | 5,900.00 |
| 6/9 | 838.86 | | 6,738.86 |

| 1979 | PREFERENCE | | NEW VALUE | | NET PREFERENCE |
|---|---|---|---|---|---|
| 6/14 | 11,200.00 | | | | 17,938.86 |
| 6/14 | | | 11,200.00 | | 6,738.86 |
| 6/29 | 10,591.01 | | | | 17,329.87 |
| 6/30 | 1,250.00 | | | | 18,579.87 |
| 7/12 | | | 200,000.00 | | |
| 7/12 | | | 100,000.00 | | –0– |
| 7/13 | 100,568.00 | (B) | | | 100,568.00 |
| 7/18 | 84,000.00 | | | | 184,568.00 |
| 7/20 | 68,462.51 | | | | 253,030.51 |
| 7/20 | 92,235.00 | | | | 345,265.51 |
| 7/20 | | | 250,000.00 | | 95,265.51 |
| 7/24 | | | 30,000.00 | | 65,265.51 |
| 7/26 | | | 30,000.00 | | 35,265.51 |
| 7/27 | | | 150,000.00 | | –0– |
| 7/30 | 100,000.00 | | | | 100,000.00 |
| 7/31 | 10,000.00 | | | | 110,000.00 |
| 7/31 | 2,400.00 | | | | 112,400.00 |
| 8/2 | | | 20,000.00 | | 92,400.00 |
| 8/6 | 40,000.00 | | | | 132,400.00 |
| 8/7 | 50,000.00 | | | | 182,400.00 |
| 8/10 | 20,000.00 | | | | 202,400.00 |
| 8/14 | | | 20,000.00 | | 182,400.00 |
| 8/22 | 200,000.00 | | | | 382,400.00 |
| 8/23 | | | 200,000.00 | | 182,400.00 |
| 8/24 | 47,000.00 | | | | 229,400.00 |
| 8/31 | 80,000.00 | (B) | | | 309,400.00 |
| 8/31 | 40,000.00 | (B) | | | 349,400.00 |
| 8/31 | 11,068.44 | (A) | | | 360,468.44 |
| 9/9 | 5,998.12 | (A) | | | 366,466.56 |
| 9/10 | | | 200,000.00 | | 166,466.56 |
| 9/13 | | | 47,000.00 | | 119,466.56 |
| 9/14 | 47,000.00 | | | | 166,466.56 |
| 9/18 | 100,000.00 | | | | 266,466.56 |
| 9/30 | 145,000.00 | | | | 411,466.56 |
| 10/16 | 60,568.00 | (C) | | | 472,034.56 |
| 10/23 | | | 100,000.00 | | 372,034.56 |
| 10/30 | | | 50,000.00 | | 322,034.56 |
| 10/31 | | | 60,568.00 | (B) | 261,466.56 |
| 11/14 | 50,000.00 | | | | 311,466.56 |
| 11/19 | | | 50,000.00 | | 261,466.56 |
| 11/19 | | | 50,000.00 | | 211,466.56 |
| 11/27 | | | 100,000.00 | | 111,466.56 |
| 11/30 | 300,000.00 | | | | 411,466.56 |
| 11/30 | 1,594.45 | (A) | | | 413,061.01 |
| 11/30 | | | 60,568.00 | (C) | 352,493.01 |
| 12/31 | | | 60,568.00 | (C) | 291,925.01 |
| **1980** | | | | | |
| 1/19 | | | 42,000.00 | (D) | 249,925.01 |

The transactions marked with letters represent transactions which, except for the "(B)" transactions on August 31, were not listed on Exhibit 25 but which the parties argue were independently established by proof at trial. These transactions will be discussed within the court's analysis of the defenses asserted by the defendant.

The journal entries in Exhibit 25 followed by "(A)" and "(B)" represent transactions which the court must independently analyze pursuant to 11 U.S.C. § 547(c)(1) and (c)(2) (West 1979). The transactions followed by "(A)" represent interest payment

made by the debtor to the defendant. The transactions followed by "(B)" represent money paid by the debtor to the defendant for rental of certain construction equipment.

■ In order to establish a defense under § 547(c)(1), a defendant must establish not only that a substantially contemporaneous exchange for new value occurred but that the parties intended the transaction to be a contemporaneous exchange. The interest transactions, marked by "(A)", were payments by the debtor to the defendant to pay for interest on loans owed by the debtor to a third party (Trial transcript, p. 357–358). Mr. Nolan testified that when the defendant received these payments it "... turned around and paid it [them] directly to the bank" (Trial transcript, p. 358). The uncontroverted proof confirms that these payments were contemporaneous with the defendant's payment to a third party to extinguish the debtor's corresponding interest debt. Since the proof also establishes that these payments were intended by the parties to be contemporaneous, they are excepted from avoidance pursuant to § 547(c)(1).

■ In order to establish a defense under (c)(2), a defendant must establish four elements. *Supra* at 7. He must establish that payments were made: (i) in payment of a debt incurred in the ordinary course of business of the debtor and the creditor; (ii) in the ordinary course of business of the debtor and the creditor; (iii) according to ordinary business terms; and (iv) not later than 45 days after the debt was incurred. In determining whether the first three elements were met, the court must look to testimony concerning the nature of the transaction in question and the business of both the debtor and the defendant.

The evidence established that the rental payments, marked by "(B)" were made on July 13, 1979, for June rental; on August 31, 1979, for July and August rental; and, on October 31, 1979, for September rental. (Trial transcript, pp. 229, 111, and 245). Mr. Gray, former secretary-treasurer of the debtor, testified that the equipment was leased by the debtor for a rental of approximately $100,000 a month (Trial transcript, p. 167). Mr. Nolan, a partner of the defendant, testified that while the defendant had originally charged the debtor rental payments in the amount of $100,568, these payments were reduced to $60,568 in August of 1979 (Trial transcript, p. 230–231). The rental was reduced both retroactively and prospectively; therefore, the defendant gave the debtor a credit of $40,000 entered on the defendant's ledger on August 31, 1979.

The evidence established that the defendant was a management company which owned and managed a business involved in the rental of equipment. The debtor was in the business of constructing pipe lines, and used equipment rented from the defendant to complete four construction jobs upon which it was engaged. The transactions in question represent monthly rental payments made by the debtor to the defendant for the use of equipment on its construction jobs. The rental rates used were considered by the parties to be the normal rental for that type of equipment. Since this evidence establishes the three elements of (c)(2) dealing with the nature of the transaction, the court must now turn to the issue of whether or not the rental payments were made not later than 45 days after the debt was incurred.

In order to determine whether the last element of (c)(2) has been established, the court must determine when the rental debts were incurred by the debtor. In determining when a debt is incurred under (c)(2), the courts have consistently held that one must look to the time when the initial obligation arose. *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981); *Ford Motor Credit Company v. Ken Gardner Ford Sales, Inc.*, 23 B.R. 743 (E.D.Tenn.1982); *Weill v. Southern Credit Union (In re Bowen)*, 3 B.R. 617 (Bankr.E.D.Tenn.1980).

At trial, Mr. Gray testified that the debtor was not obligated to make rental payments until the equipment was, in fact, used. When the debtor began using the

equipment in June, it was at that time that it began to make the above-mentioned rental payments (Trial transcript, p. 169). Since the proof established that the debtor was legally obligated to pay rental at the time the equipment was used, the court holds that the debtor incurred rental payments on the first day of each month it used the equipment. Accordingly, the court holds that the following payments of equipment rental are excepted from avoidance pursuant to (c)(2): (i) $60,568 paid to the defendant on July 13, and (ii) $60,568 paid to the defendant on August 31.

■ The final issue that the court must resolve concerning the "(B)" transactions is the treatment of the debtor's $40,000 overpayment. The defendant has argued that the $40,000 credited to the debtor on August 31 was, in fact, a preferential payment received by the defendant on July 13. The trustee has countered that the $40,000 credit did not become property of the defendant until August 31 when it was attributed to the debtor's accounts.

The court has determined that the $40,000 overpayment received by the defendant on July 13 was a preferential transfer as of that date. The evidence established that the funds in question were received by the defendant on July 13. The fact that the defendant later determined that this amount was an overpayment did not have the effect of nullifying the July 13 transaction. At the time the overpayment was discovered, the defendant became indebted to the debtor for the overpayment. This indebtedness was satisfied on August 31.

The Exhibit 25 journal entries followed by "(C)" and "(D)" relate to the issue of whether or not they constitute "new value" within the context of 11 U.S.C. § 547(c)(4) (West 1979). The transactions marked

with "(C)" represent the value of the use of equipment leased by the defendant to the debtor for the months of October, November and December. The evidence at trial established that, although the debtor had incurred these obligations, they had not been paid. (Trial transcript, p. 335). The transaction marked "(D)" represents an alleged payment made by the defendant to the debtor to close out the debtor's payroll bank account (Trial transcript, p. 337).

■ A defendant who seeks to establish "the subsequent advance rule" of 11 U.S.C. § 547(c)(4) (West 1979), must meet three requirements: The creditor must have extended the new value after receiving the preference; the new value must have been unsecured; and the new value must remain unpaid.[5] *Keydata Corporation v. Boston Edison Company*, 37 B.R. 324, 328 (Bankr. D.Mass.1983); *Pettigrew v. Trust Company Bank (In re Bishop)*, 17 B.R. 180, 183 (Bankr.N.D.Ga.1982). In analyzing the transactions in the present case, the court must focus on two primary issues. It must first determine whether or not a given transaction constitutes "new value" within the context of (c)(4). If new value was extended by the defendant to the debtor, then the court must determine at what time the transaction occurred.

In determining whether or not a defendant has established a (c)(4) exception, courts have focused upon the purpose of this exception. "The purpose of § 547(c)(4) is precisely to encourage trade creditors to continue dealing with troubled businesses." *Gold Coast Seed Company v. Spokane Seed Company*, 30 B.R. 551, 553 (Bankr. 9th Cir.1983). *See also Philadelphia Light Supply Company v. B.R.K. Electronics*, 33 B.R. 734, 739 (Bankr.E.D.Pa.1983). With this rationale in mind, the court turns

---

**5.** 11 U.S.C. § 547(c)(4) (West 1979) provides in relevant part:

"(c) The trustee may not avoid under this section a transfer—

.        .        .        .        .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; ..."

to an analysis of what constitutes "new value" under (c)(4) and when a transfer occurs under (c)(4).

"New value" is defined in 11 U.S.C. § 547(a)(2) (West 1979).[6] Courts, in applying this definition, have focused on whether or not the debtor's estate was materially benefitted by the transaction in question.[7] Courts have found new value to include such items as use of electricity, providing a guarantee for a new loan to the debtor, shipment of goods, and the use of leased premises. *Keydata Corporation v. Boston Edison Company*, 37 B.R. 324 (Bankr. D.Mass.1983); *Eisenberg v. J.L. International, Ltd. (In re Sider Ventures and Services Corp.)*, 33 B.R. 708, 712 n. 2 (Bankr.S.D.N.Y.1983); *Rovzar v. Prime Leather Finishes (In re SACO Local Development Corp.)*, 30 B.R. 859, 862 (Bankr. D.Me.1983); *Thomas W. Garland, Inc. v. Nooney Company*, 28 Bankr. 87 (Bankr.E. D.Mo.1983).

■ The proof at trial established that the debtor used the rental equipment of the defendants from June of 1979 until December 31, 1979. While the debtor had paid rent to the defendant for a number of these months, the defendant did not receive rental payments for the use of said equipment during the months of October, November and December. The transactions marked by "(C)" represent the unpaid equipment rental for these three months. The use of this construction equipment was a transfer of new value from the defendant to the debtor. The debtor was enriched by its use and did not pay for this value or provide security. *See Keydata Corporation* at 328; *Garland* at 89.

Although the unpaid rental charges marked by "(C)" do, in fact, represent new value, the court must still determine when in fact this new value was advanced by the defendant to the debtor. As discussed above, the court has held that the debtor was obligated to pay rent at the time the rental property was used. Accordingly, the court holds that the defendant gave new value to the debtor when the rental property was used by the debtor. Therefore, the value of the equipment used during the months of October and November were given by the defendant to the debtor before the $300,000 preferential transfer made on November 30th. The value of the rental equipment used by the debtor during the month of December was given by the defendant to the debtor subsequent to the November 30th preferential transfer.

■ The transactions marked by "(D)" represent a transfer from the defendant to the debtor to close out the debtor's payroll account. The testimony at trial established that the advance was in the amount of a little more than $42,000 and that it was a "final advance" from the defendant to the debtor made at the end of 1979. Based on

---

**6.** 11 U.S.C. § 547(a)(2) (West 1979) provides:
"(a) In this section—

.        .        .        .        .

(2) 'new value' means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, that does not include an obligation substituted for an existing obligation; ..."

**7.** Section (c)(4) was preceded by section 60(c) of the former Bankruptcy Act. The language of section 60(c) was almost identical to the language of (c)(4): "(c) If a creditor has been preferred, and afterward in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudica-

tion in bankruptcy may be set off against the amount which would otherwise be recoverable from him." 11 U.S.C.A. § 96(c) (West 1968). In dealing with the problem of what constituted "credit ... of any kind for property ...", the courts under the former Act analyzed a transaction to determine whether or not "... the bankrupt estate has been enhanced to the extent of the property added by the creditor...". *American Standard, Inc. v. Nass (In re Jack Kardow Plumbing Company)*, 451 F.2d 123, 138 (5th Cir. 1971); *Atlas v. Eastern Yarn Mills*, 27 F.Supp. 478, 479 (E.D.N.Y.1939). Under this analysis, the courts found intangibles such as legal services and accounting services to be within the definition of "property" for the purposes of section 60(c). *Kamerman & Kamerman v. Seligson (In re Ira Haupt & Co.)*, 424 F.2d 722, 724 (2nd Cir.1970).

this proof, the court holds that the defendant did provide the debtor new value in the amount of $42,000 at the end of 1979. Although the exact date of the transfer was not established at trial, the court holds that the proof is sufficient to establish that the transaction took place after November 30, 1979.

The court has examined the record and has determined that the transactions, with the exceptions of those discussed above, between the defendant and the debtor are properly listed and categorized in the chart produced above. Based on this court's decision concerning the disputed transactions, the court has determined that the defendant received preferential payments in the amount of $197,432. The following chart shows the court's computation of this amount:

| 1979 | PREFERENCE | NEW VALUE | NET PREFERENCE |
|------|-----------|-----------|----------------|
| 5/20 | 5,900.00 | | 5,900.00 |
| 6/9 | 838.86 | | 6,738.86 |
| 6/14 | 11,200.00 | | 17,938.86 |
| 6/14 | | 11,200.00 | 6,738.86 |
| 6/29 | 10,591.01 | | 17,329.87 |
| 6/30 | 1,250.00 | | 18,579.87 |
| 7/12 | | 200,000.00 | |
| 7/12 | | 100,000.00 | -0- |
| 7/13 | 40,000.00 (B) | | 40,000.00 |
| 7/18 | 84,000.00 | | 124,000.00 |
| 7/20 | 68,462.51 | | 192,462.51 |
| 7/20 | 92,235.00 | | 284,697.51 |
| 7/20 | | 250,000.00 | 34,697.51 |
| 7/24 | | 30,000.00 | 4,697.51 |
| 7/26 | | 30,000.00 | -0- |
| 7/27 | | 150,000.00 | -0- |
| 7/30 | 100,000.00 | | 100,000.00 |
| 7/31 | 10,000.00 | | 110,000.00 |
| 7/31 | 2,400.00 | | 112,400.00 |
| 8/2 | | 20,000.00 | 92,400.00 |
| 8/6 | 40,000.00 | | 132,400.00 |
| 8/7 | 50,000.00 | | 182,400.00 |
| 8/10 | 20,000.00 | | 202,400.00 |
| 8/14 | | 20,000.00 | 182,400.00 |
| 8/22 | 200,000.00 | | 382,400.00 |
| 8/23 | | 200,000.00 | 182,400.00 |
| 8/24 | 47,000.00 | | 229,400.00 |
| 8/31 | 60,568.00 (B) | | 289,968.00 |
| 8/31 | | | 289,968.00 |
| 9/9 | | | 289,968.00 |
| 9/10 | | 200,000.00 | 89,968.00 |
| 9/13 | | 47,000.00 | 42,968.00 |

| 1979 | PREFERENCE | NEW VALUE | NET PREFERENCE |
|------|-----------|-----------|----------------|
| 9/14 | 47,000.00 | | 89,968.00 |
| 9/18 | 100,000.00 | | 189,968.00 |
| 9/30 | 145,000.00 | | 334,968.00 |
| 10/16 | 60,568.00 (B) | | 395,536.00 |
| 10/23 | | 100,000.00 | 295,536.00 |
| 10/30 | | 50,000.00 | 245,536.00 |
| | | 60,568.00 (C) | 184,968.00 |
| 11/14 | 50,000.00 | | 234,968.00 |
| 11/19 | | 50,000.00 | 184,968.00 |
| 11/19 | | 50,000.00 | 134,968.00 |
| 11/27 | | 100,000.00 | 34,968.00 |
| | | 60,568.00 (C) | -0- |
| 11/30 | 300,000.00 | | 300,000.00 |
| 11/30 | | | 300,000.00 |
| | | 60,568.00 (C) | 239,432.00 |
| | | 42,000.00 (D) | 197,432.00 |

The trustee has asserted that he is entitled to interest at the rate of 20 percent per annum from April 16th, 1980, the date the amended complaint was filed. The trustee bases his claim upon 11 U.S.C. § 550(a) (West 1979) which provides that he is entitled to recover the value of property avoided under § 547.[8] The trustee has cited this court to several cases under the former Bankruptcy Act holding that a trustee who successfully avoids preferential payments is entitled to interest on said payments from the date of commencement of the action. *Feinblatt v. Block,* 456 F.Supp. 776 (D.Md.1978). *See also Waite v. Second National Bank,* 168 F.2d 984 (7th Cir.1948).

The defendant asserts that it would be inequitable for this court to award pre-judgment interest in this case. The two reasons cited by the defendant to justify a denial of pre-judgment interest are that the defendant was not responsible for any delay in litigating this matter and that the proof established a net increase to the debtor's estate due to its transactions with the defendant.

Upon consideration of the applicable authority cited by the trustee, the court determines that the trustee is entitled to the value of the preferential transfers, includ-

**8.** 11 U.S.C. § 550(a) (West 1979) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

ing an appropriate rate of interest. Accordingly, the court ORDERS that the defendant pay the trustee interest at the appropriate legal rate from the date of April 16, 1980, until the date of judgment.

The court will accordingly enter an order GRANTING judgment to the trustee and requiring the defendant to turn over to the trustee preferential transfers in the amount of $197,432 plus interest.

IT IS, THEREFORE, SO ORDERED.