**In re JET FLORIDA SYSTEM, INC., Debtor.**

**CHARISMA INVESTMENT COMPANY, N.V., Plaintiff-Appellant,**

v.

**AIRPORT SYSTEMS, INC., a/k/a Jet Florida System Inc., a/k/a Air Florida, Inc., Defendants-Appellees.**

No. 87-5024.

United States Court of Appeals, Eleventh Circuit.

April 5, 1988.

William R. Clayton, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for plaintiff-appellant.

Jerry M. Markowitz, Markowitz, Davis & Ringel, Candis Trusty, Miami, Fla., for AFS and AFI.

John K. Olson, Jet Florida, Inc., Miami Springs, Fla., for Airport Systems, Inc.

Before HILL, Circuit Judge, HENDERSON [*], Senior Circuit Judge, and MURPHY [**], District Judge.

PER CURIAM:

Appellant Charisma Investment Company, N.V. (Charisma) received $11,761.83 from appellee Air Florida, Inc. (Air Florida) within the preference period set forth in section 547(b) of the Bankruptcy Code. 11 U.S.C. § 547(b). The district court concluded that the bankruptcy court's findings of fact were not clearly erroneous and that "new value" had not been extended by Charisma such that the "subsequent advance" exception, 11 U.S.C. § 547(c)(4), should exempt Air Florida's payments made during the preference period, 68 B.R. 596. We affirm.

Charisma asserts that the district court improperly affirmed a factual determination made by the bankruptcy court. The bankruptcy court found that Air Florida had discontinued actual use of the leased premises as of November 1982, more than 19 months before filing for bankruptcy. While Charisma proffers its property manager's testimony that Air Florida had utilized the premises well into 1983, it con-

---

[*] *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Honorable Harold L. Murphy U.S. District Judge for the Northern District of Georgia, sitting by designation.

cedes that Air Florida's former warehouse supervisor testified to the contrary. It is within the exclusive province of the finder of fact to resolve such conflicts of testimony, and since this determination is not clearly erroneous these findings shall not be overturned.

The gravamen of Charisma's appeal lies in its assertion that the continued availability of the leased premises for Air Florida's use constituted "new value" and therefore falls within the subsequent advance exception for purposes of section 547(c)(4) of the Bankruptcy Code. 11 U.S.C. § 547(c)(4).

It is undisputed that Air Florida paid an amount in excess of eleven thousand dollars to Charisma within this ninety-day preference period, and that this amount may be recovered by the Trustee unless it falls within the subsequent advance exception set forth in section 547(c)(4). *See In re Fulghum Const. Corp.*, 45 B.R. 112 (Bankr.M.D.Tenn.1984), *aff'd*, 78 B.R. 146 (M.D.Tenn.1987). A subsequent advance is excepted because it is reasoned that a creditor who contributes new value in return for payments from the incipient bankrupt, should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other creditors. *See* V. Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 *Van.L.Rev.* 713, 781–790 (1985). In pertinent part this section of the Bankruptcy Code provides that:

> (c) The trustee may not avoid under this section a transfer—
>
> . . . .
>
> > (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
> >
> > > (A) not secured by an otherwise unavoidable security interest; and
> > >
> > > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor....

11 U.S.C. § 547(c)(4). This section has generally been read to require: (1) that the creditor must have extended the new value after receiving the challenged payments, (2) that the new value must have been

unsecured, and (3) that the new value must remain unpaid. *See e.g., In re Fulghum*, 45 B.R. at 119; *In re Keydata Corporation*, 37 B.R. 324, 328 (Bankr.D.Mass.1983); *In the Matter of Bishop*, 17 B.R. 180, 188 (Bankr.N.D.Ga.1982).

In the instant case, the second and third elements have concededly been satisfied. The rent due Charisma between May and July, 1984 was unsecured and remained unpaid. The only remaining issue is whether the continued availability of the premises for Air Florida's use constituted "new value" as a matter of law such that Charisma would be entitled to retain the $11,761.33 paid to it by Air Florida during the preference period.

"New value" for purposes of section 547 of the Bankruptcy Code is defined as

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2). In applying this definition of new value to the subsequent advance exception, courts have consistently looked to the principal policy objectives underlying the preference provisions of the Bankruptcy Code. The first objective is to encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse. *See In re Gold Coast Seed Company*, 30 B.R. 551, 553 (Bankr. 9th Cir.1983); *In re Fulghum*, 45 B.R. at 119; *In re Philadelphia Light Supply Co.*, 33 B.R. 734, 739 (Bankr.E.D.Pa.1983). Another related objective of this section is to promote equality of treatment among creditors. *See In re Quality Plastics, Inc.*, 41 B.R. 241, 242 (Bankr.W.D.Mich.1984); *see generally* H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–79, 372–74 (1978), *reprinted in* 1978 *U.S.Code Cong. and Admin.News*, pp. 5787, 5963, 6138–40, 6328–30. The subsequent advance exception promotes these general policy objectives "because its utili-

ty is limited to the extent to which the estate was enhanced by the creditor's subsequent advances during the preference period." 4 *Collier on Bankruptcy*, ¶ 547.12, at 547–49 n. 5 (15th ed. 1987); *see also* Countryman, *Voidable Preference*, 38 *Vand.L.Rev.* at 785.

Thus, courts have generally required a transfer which fits within the subsequent advance exception to provide the debtor with a material benefit. *In re Fulghum*, 45 B.R. at 120; *see also In re Quality Plastics*, 41 B.R. at 243. This focus upon whether a material benefit has been conferred has been explained in terms of insulating a preferential transfer to a particular creditor to the extent that that creditor thereafter replenishes the estate. In such a situation, the creditor pool would not be harmed to the extent of the offset and the fundamental goal of equality of distribution would be preserved. *See In re Quality Plastics*, 41 B.R. at 242; Levin, *An Introduction to the Trustee's Avoiding Powers*, 53 *Am.Bankr.L.J.* 173, 187 (1979).

Consideration fitting the definition of "new value" and constituting a material benefit to the debtor has been found in a number of circumstances including: the value of insurance coverage provided after the payment of delinquent premiums, *In re Dick Henley, Inc.*, 45 B.R. 693, 699 (Bankr. M.D.La.1985); the value of leased equipment when the lessor permitted the debtor-lessee to continue using the equipment to produce inventory after default in rental payments, *In re Quality Plastics*, 41 B.R. at 243; and the value of the electricity supplied by the utility to the debtor after preferential payments, *In re Keydata Corp.*, 37 B.R. 324, 328–29 (Bankr.D.Mass. 1983). Each of these cases arguably involved putting the collateral to a materially beneficial use.

On the other hand, the court in *In the Matter of Duffy*, 3 B.R. 263 (Bankr.S.D.N.Y.1980), without revealing to what use the debtor had put a rented car, held that the lessor gave no new value by forbearing to repossess the car after the debtor defaulted on rental, because the forbearance did "not enhance the value of the debtor's es-

tate. The debtor's continued right to drive the rented vehicle is not an asset of benefit to his creditors that could reasonably offset the diminution of his estate upon payment of the [preference]." *Id.* at 266.

Similarly in *In the Matter of Lario*, 36 B.R. 582 (Bankr.S.D.Ohio 1983), the court held that a lessor of real estate did not give new value under Section 547(c)(4) by forbearing to terminate the lease for defaults beginning in June or by consenting to an assignment of the lease for a price, which produced enough to pay the lessor and other creditors in November before bankruptcy. By forbearing to terminate, the lessor was "merely exercising a pre-existing right, not giving 'new value.'" *Id.* at 584. In exchange, the debtor's obligation to pay rent was replaced by an obligation to pay an antecedent debt, merely resulting in an obligation substituted for an existing obligation, explicitly excluded from "new value" by section 547(a)(2). *Id.; cf. Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1159 n. 7 (D.C.Cir.1986) (holding that forbearance cannot constitute new value, but declining to rely on *In re Duffy*).

In the instant case, the bankruptcy court found that Air Florida had made no use of the rental property throughout the preference period. While Charisma's forbearance might have constituted new value had Air Florida actually stayed and used the leased property, or had Air Florida been able to find a sublessee, the bankruptcy court found that Air Florida vacated the property by November, 1982 and made no further use of it. The district court noted that far from replenishing the estate of the debtor, this lease was, and continued to be, a financial drain on the estate, and the debtor was placed in the financially precarious position of having to pay rent for property it could not beneficially use. Absent such use, Charisma's forbearance to terminate the lease could not constitute new value. Thus, the order of the district court is

AFFIRMED.