**In re THOMAS W. GARLAND, INC., Debtor.**

**THOMAS W. GARLAND, INC., Plaintiff,**

v.

**NOONEY COMPANY, Defendant.**

**Adv. No. 81–0260(1).**
**Bankruptcy No. 80–01175(1).**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Jan. 28, 1983.

See also, Bkrtcy., 19 B.R. 920.

Curtis L. Mann, A. Thomas DeWoskin, Clayton, Mo., for debtor-plaintiff.

James E. McDaniel, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

ROBERT E. BRAUER, Bankruptcy Judge.

In this Chapter 11 case, initiated by the filing of a voluntary petition on May 27, 1980, Debtor Plaintiff seeks to recover, upon an Amended Complaint filed August 24, 1981, the sum of $8,733.31 alleged to be paid to the Defendant within 90 days of the filing, and alleged to be preferential payments within the meaning of 11 U.S.C. § 547(b), recoverable under 11 U.S.C. § 550(a)(1). Defendant resists recovery on several grounds: res judicata, equitable estoppel, the payments were made as a contemporaneous exchange for new value [11 U.S.C. § 547(c)(1)], and made in the ordinary course of business and not later than 45 days after the debts, on account of which the payments were made, were incurred [11 U.S.C. § 547(c)(2)]; and, as to one payment, that it was made more than 90 days prior to the filing of the petition.

Each party has filed a Motion For Summary Judgment, each claiming that the facts, in respect of the Complaint, are not in dispute.[1]

Debtor leased premises known as 12–14 Hampton Village Plaza on November 1, 1970, for a term of 5 years commencing September 1, 1971, and ending August 31, 1976, at an annual minimum guaranteed rent of $20,000, payable in monthly installments of $1,667, each payable in advance on the first day of each calendar month. The 1971 lease also provided that Debtor (Lessee) was to be furnished (by the Lessor) with water and electricity, Debtor to pay (Lessor) therefor when billed at the current rates of the public utility furnishing such service. By Lease Rider No. 2 thereto, the Lessor agreed to furnish heating water to the leased premises, and condensing water to the air conditioning system, for an additional $600 a year, payable in equal monthly installments of Fifty Dollars ($50.00), to be added to and considered a part of the rent.[2] Lease Rider No. 2 also provides that the Lessor was to provide, at Debtor's expense, a container for the disposal of trash by the Debtor, for which (the container, and trash removal) Debtor was to pay the Lessor $120 a year, in equal monthly installments of $10, "to be added to and considered part of its rent".[3]

On June 16, 1976, the term of the Lease was extended, by agreement,[4] "so as to expire on August 31, 1981." The minimum guaranteed annual rent was increased by $7,000, "payable in equal monthly installments of five hundred eighty-three and 33/100 ($583.33) on the first of each and every calendar month of said extended term in advance ... so that the rental payable during said extended term shall be twenty-seven thousand and no/100 ($27,000.00) per annum payable in equal monthly installments of two thousand two hundred fifty and no/100 ($2,250.00) on the first day of each and every calendar month of said extended term in advance..."

By this extension agreement, Debtor agreed (para. 5) to pay $1,622 per year for "common area charge", or "parking lot and mall maintenance", as additional rent, "payable in equal monthly installments of $135.17"; and agreed to an increase, to $85 a month, for Lessor's continued supply of heating and condensing water (para. 6). In all other respects,[5] the earlier lease was to remain in force and effect, and was "ratified and confirmed".

.      .      .      .      .

1. Defendant has filed, on October 16, 1981, a Counterclaim, which is to be addressed infra.

2. This Rider does not expressly state that each monthly installment was to be paid in advance. The reasonable interpretation thereof, however, since the Rider relates the charge as "a part of the rent", and the Lease provides for the payment of rent "in advance", is that those monthly payments are to be made in advance.

3. See footnote 2 for appropriate commentary.

4. Denominated First Amendment To Lease.

5. Other modifications to the original lease were made, also, by the extension agreement, but none of them are relevant here.

The principal bases upon which the Debtor predicates its motion are twofold: (1) any payment of rent made within the 90 day preference period is recoverable as the payment of an antecedent debt, the debt for the rent having been incurred on September 1, 1976, the beginning of the new lease term; and (2) Defendant is precluded by the entry of a consent decree, in Adversary Cause 80–0383(1), [Nooney Company, Plaintiff, vs. Thomas W. Garland, Inc., Defendant], on January 20, 1981, from the offset, against such payments, of unpaid rents becoming due subsequent to such payments. [11 U.S.C. § 547(c)(4)].

■ The first basis has been undercut by the recent decision of the 8th Circuit Court of Appeals, en banc, filed December 17, 1982, in *In re Iowa Premium Service Co., Inc.,* CCH Bankruptcy Law Reporter, para. 68,919, pp. 81,523 et seq., where the Court (in the majority, *and* in the dissenting, opinions), citing with approval *In re Mindy's, Inc.,* 17 B.R. 177 (Bkrtcy.Ct.S.D.Ohio, 1982), tells us that a debt for rent, under a lease, payable monthly, is not incurred until the due date of the rental payment; that the due date is not the date of the lease, but the date upon which the monthly installment of rent is to be paid.

Thus, Debtor's payments, under the lease, made within the 90 day preference period, are not recoverable on the theory that they were preferential because made in payment of a debt incurred on September 1, 1976. Moreover, *Iowa Premium* permits Defendant to contend for the application of exceptions to recovery found in 11 U.S.C. § 547(c)(4) [exceptions not applicable if the debt for rent had been incurred on September 1, 1976].

■ Which brings us to Debtor's second point, that Defendant cannot avail itself of *any* of those exceptions, because it released

that right by the consent decree previously referred to. By the decree, specifically consented to, by Defendant, in consideration of the Debtor's surrender of the leased premises by a time certain, Defendant "releases and holds harmless debtor from any and all claims for delinquent rent, electricity and water, common area charges, heating and condensing water charges, disposal and sales tax charges and damages to the premises, and any other claims which accrued or will accrue to plaintiff under the terms of the aforesaid lease." [6]

The release does not, in my judgment, preclude Defendant's assertion of a set-off, under 11 U.S.C. § 547(c)(4), of "new value", in the form of delinquent rent which accrued subsequent to the challenged payments. The release speaks to the release of *claims.* The Bankruptcy Code, 101(4), defines a claim to mean a right of payment; and, in ordinary parlance, the word means a right to obtain some affirmative measure of relief against another. In the context of this case, "claim" means Defendant's right to obtain payment (by distribution under a prospective Chapter 11 plan, by dividend in a converted Chapter 7 case, or by an in personam payment if the Chapter 11 case were dismissed) from the Debtor for any delinquent rent, and damages. It does not embrace, in my judgment, any rights given by Section 547(c) to defeat Debtor's preference claims.

Moreover, the release speaks to the release of claims which have accrued or will accrue "under the terms of the aforesaid lease." Defendant's right to avail itself of the shield of Section 547(c) is a statutory right, a right that does not arise under the lease.

More simply stated, Defendant can defeat Debtor's right of recovery of the alleged preference payments by proof of delinquencies in rent occurring subsequent to such payments.

---

**6.** In Adversary Cause 80–0383(1) Defendant sought relief from the stays of 11 U.S.C. § 362 because of Debtor's alleged default in the payment of December 1980 (post Chapter 11) rent, and in the payment of the April, and May (pre Chapter 11) rent. An earlier adversary cause seeking similar relief was filed by Defendant,

soon after the filing of the Chapter 11 petition. In it, judgment, after trial, was entered for the Debtor, because the proof showed the current payment of post-petition rent, the judgment being without prejudice to a subsequent filing in the event a rent delinquency occurred.

Whether any such delinquencies occurred is the subject of dispute. Defendant filed a Counterclaim, on October 16, 1981, alleging pre-petition delinquencies of rent, totaling $5,648.62, and post-petition delinquencies [7] of $6,165.41. The substantive allegations thereof have been denied by the Debtor in its Reply to the Counterclaim, filed November 12, 1981. The denial precludes summary judgment for the Defendant on this ground.[8]

.        .        .        .        .

Defendant's motion for summary judgment is actually based on other grounds.[9]

Two of these grounds are inter-related: Defendant contends that the doctrines of res judicata, and equitable estoppel, preclude judgment on the Complaint; that the doctrines are applicable because of things which occurred in the proceedings in the Adversary Cause hereinbefore referred to (footnote 6, supra). Although Defendant has exhaustively briefed these issues on at least two different motions in this case, it is my judgment that neither principle applies, in this case, to warrant judgment upon Defendant's motion. I will not burden this opinion with any extended discussion of those issues, however—principally because I feel that the application of Section 547(c)(4) will dispose of this Cause once the Debtor, in good faith, determines (and concedes) that delinquencies in rent occurred subsequent to the last preference payment.

I hold also that the contemporaneous exchange exception, in 547(c)(1) has no application in this case, for reasons given by Debtor in its briefs. I hold, also, that neither the February 1, nor the March 1, 1980, invoice (each rendered by Defendant to the Debtor) is of any substantive meaning or consequence, either as evidence of a date upon which Debtor incurred any debt the payment of which is the subject matter of this cause, or as evidence of new value, then given, in respect of the rent shown on those invoices to be delinquent when the invoice was submitted.

Which brings us to the remaining contentions made by Defendant: (1) that at least one of the payments [10] was made prior to the 90 day preference period, and (2) that two of the payments were made on the 45th day subsequent to the date upon which the debt, being paid, was incurred. Resolution of each of these issues requires a judicial determination of when payment was made: whether the payment was made when the payment check was delivered to the Defendant, or (at some later day) when the check cleared Defendant's checking account. The second of the two contentions requires, also, a judicial determination of whether the 45 day rule, of 11 U.S.C. § 547(c)(2), has any application in a case of this kind. *In re Mindy's, Inc.*, supra, applied the 45 day rule, but the Bankruptcy Judge pointed out, in his opinion, that the patterns of payment shown by the evidence in the case reflected that the *Mindy* payments were made in the ordinary course of the lease transactions between the debtor and its lessor. The motion record, sub judice, is not so clear. Further, I am not confident that the 45 day rule has application in a case such as this.

In any event, I do not choose to rule Defendant's motion by a final ruling on these two issues.

Furthermore, at least one of the 5 payments was made within the 90 day preference period, and more than 45 days subsequent to the due date of the rent obligation being paid, so that a final, binding judgment, on Defendant's motion, cannot be made upon the present record. Implicit in

---

**7.** It is my judgment that post-petition delinquencies may be set-off, under 547(c)(4), against the alleged preference payments, as well as pre-petition delinquencies.

**8.** Debtor must, in good faith, determine if any such delinquencies occurred. If so, and if such delinquencies equal or exceed the total of the alleged preference payments, there is not any basis for recovery under the Complaint, and it ought to be dismissed.

**9.** Grounds stated in the first paragraph, page 88, supra.

**10.** Five payments are embraced by the Amended Complaint. Each was made by check.

this is the recognition that a payment of rent under a lease may constitute a preference; *Iowa Premium,* and *Mindy's,* are not authority that rent payments under a lease cannot ever be considered to be voidable preferences. See *Mindys,* 17 B.R. loc. cit. 180.

Accordingly, each motion is being over-ruled, by order entered this date. The order fixes a trial date, also.

Counsel for the parties are directed to determine, in good faith, whether any delinquencies occurred subsequent to the last payment said to constitute a voidable preference, and, if so, to determine the amount of those delinquencies, and thereafter proceed in accordance with the sentiments expressed in this opinion.