**CHARISMA INVESTMENT COMPANY, N.V., Appellant,**

v.

**AIR FLORIDA SYSTEM, INC., and Air Florida, Inc., Appellee.**

No. 86–0023–Civ.

United States District Court, S.D. Florida.

Dec. 15, 1986.

---

William R. Clayton, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for appellant.

Hywel Leonard, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for appellee.

## FINAL JUDGMENT

EDWARD B. DAVIS, District Judge.

### JURISDICTION

The District Court has jurisdiction of this appeal pursuant to 28 U.S.C. Section 158(a). This statute provides that "(t)he district courts ... shall have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts."

### STATEMENT OF ISSUES PRESENTED

Whether the bankruptcy court erred in holding that CHARISMA had provided no "new value" to AIR FLORIDA when the claimed "new value" arose from unpaid "rent" obligations for a leased premises found to have been vacated by AIR FLORIDA more than nineteen months prior to the filing of the petition for reorganization?

## STANDARD OF REVIEW

A bankruptcy judge's conclusions of law are freely reviewable on appeal. *Machinery Rental, Inc. v. Herpel*, 622 F.2d 709, 713 (5th Cir.1980); *In re Duque*, 48 B.R. 965 (Bankr.S.D.Fla.1984). However, in accordance with Bankruptcy Rules 7052(a) and 8013 and Rule 52(a) of the Federal Rules of Civil Procedure, a bankruptcy judge's findings of fact shall not be set aside unless "clearly erroneous." Furthermore, due regards shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses and access the weight of the evidence.

## STATEMENT OF THE CASE

In March, 1981, AIR FLORIDA, INC. (hereinafter referred to as "AIR FLORIDA") leased commercial property from CHARISMA INVESTMENT COMPANY, N.V. (hereinafter referred to as "CHARISMA") for rent of approximately $10,365.00 per month, plus maintenance and taxes, payable in advance on the first day of each month. The bankruptcy judge found that in November, 1982, some nineteen months prior to filing its petition for reorganization, AIR FLORIDA vacated the aforementioned leased premises.

In February, 1984, CHARISMA filed suit in Dade County Circuit Court against AIR FLORIDA for nonpayment of rent. On March 5, 1984, CHARISMA served a prejudgment writ of garnishment on Southeast Bank, N.A. (hereinafter referred to as "Southeast") in the amount of $34,117.59 for the rent money due for January, February and March, 1984. A final judgment for the rent due for January, February, March and April, 1984 was entered on April 13, 1984, in the sum of $45,683.26. CHARISMA then obtained a final judgment in garnishment against Southeast, which was entered in the amount of $40,000.00 and promptly satisfied. Still attempting to fully satisfy the judgment of April 13, 1984, for rent against AIR FLORIDA, CHARISMA again garnished Southeast on April 24, 1984, which ultimately resulted in another recovery of $5,878.92.

On July 3, 1984, AIR FLORIDA filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (hereinafter cited as the "Code"). In April, 1985, AIR FLORIDA and AIR FLORIDA SYSTEM, INC. filed an adversary complaint in the bankruptcy court against CHARISMA to avoid the transfers, which totalled $45,878.92, as preferential transfers under 11 U.S.C. Section 547(b). The adversary proceeding was tried before the bankruptcy judge on June 4, 1985.

Counsel for the parties agree that since AIR FLORIDA filed its bankruptcy petition on July 3, 1984, the pertinent ninety day preference period during which transfers may be avoided began to run on April 4, 1984. The parties do not contest that AIR FLORIDA was insolvent throughout the ninety day period and that the sums obtained by CHARISMA from Southeast were payments to an AIR FLORIDA creditor on account of an antecedent debt allowing CHARISMA to receive more than it would have under a Chapter 7 liquidation had the payments not been made. In short, apart from the new value argument, CHARISMA does not dispute that a preferential transfer occured in the amount of $11,761.33.

On July 8, 1985, the court entered its findings of fact and conclusions of law. The bankruptcy judge concluded as follows:

> Because the critical date under Florida law for the determination of when a transfer is made pursuant to a garnishment is the date on which the writ is served on the garnishee, the Court concludes that Air Florida was effectively deprived of $34,117.59 on March 5, 1984, the date on which the first writ of garnishment was served on Southeast, and outside the ninety (90) day preference period. *In re MDF, Inc.*, 39 B.R. 14 [16] (S.D.Fla.1982). Accordingly, the amount is not recoverable as a preference, notwithstanding the fact that that amount was included in the $40,000 paid by Southeast on April 25, 1984. However, because all amounts recovered in excess

of $34,117.59 pursuant to the first writ of garnishment only arose as a lien on the date final judgment in garnishment was entered on April 25, 1984, $5,882.41 of the $40,000 paid on April 25, 1984 are recoverable as a preference by Air Florida.

Finally, the entire amount recovered by Charisma pursuant to the second writ of garnishment, $5,878.92 is recoverable by Air Florida as a preference. No new value was given by Charisma to Air Florida after the payment of $5,878.92 by Southeast to Charisma, and Charisma has shown no other defenses to the recovery of that amount as a preference.

## DISCUSSION

Section 547 of the Bankruptcy Code provides the trustee with the power to avoid certain transfers of property of the debtor made to creditors and occurring within ninety (90) days of the debtor's filing a petition in bankruptcy. Such transfers are considered "preferences" and as such are avoidable absent the availability of some exception under subsection (c) of Section 547.

As indicated earlier, CHARISMA does not dispute the fact that the $5,882.41 and $5,878.92 transfers, occurring after April 4, 1984, were preferential payments potentially recoverable by the Trustee under Section 547 of the Code. What CHARISMA does challenge is the bankruptcy court's finding that CHARISMA's forbearance in pursuing its available legal remedies [1] failed to qualify as an exception to the voidable preference rule because such did not constitute "new value" pursuant to Section 547(c)(4).

CHARISMA's objection to the bankruptcy court's decision is two-fold. First, CHARISMA contends that the bankruptcy judge's finding that AIR FLORIDA ceased its occupancy of the leased premises by November, 1982, is clearly erroneous in light of evidence presented to the contrary. Second, CHARISMA argues that even assuming the Debtor did vacate the leased premises, the bankruptcy judge erred as a matter of law in holding that the mere continued availability—as oppose to actual use—of the leased premises for AIR FLORIDA's use and occupancy failed to constitute "new value" as that term is defined in Section 547(a) of the Code.

1. *Bankruptcy Judge's Finding of Fact Not Clearly Erroneous*

■ On June 4, 1985, the bankruptcy court held an adversarial proceeding concerning the recoverability of several preferences allegedly paid CHARISMA by Southeast on behalf of the Debtor, AIR FLORIDA. After considering all the documentary evidence, arguments of counsel and having observed the demeanor and credibility of the witnesses and their testimony, the bankruptcy court found that AIR FLORIDA vacated the leased premises in question in October and November, 1982.[2]

There is ample evidence in the record of the bankruptcy proceeding to support the bankruptcy judge's conclusion that the debtor ceased its occupancy of the leased premises by November, 1982, and henceforth made no further actual use of that property. John Falco, a former warehouse supervisor for AIR FLORIDA, testified that "the people moved out in October, 1982, and all the stuff that [they] were going to take, the partitions, the desks, and everything, were out in November."[3] While the Record contains some testimony contrary to Mr. Falco's attestation, such does not render' the bankruptcy judge's finding clearly erroneous.

Before a factual finding of a bankruptcy judge can be overturned, the district court sitting as an appellate tribunal must be

---

1. "[A]t any time, we could have sought to evict Air Florida. There was no dispute that they were in default of the rent. We did not seek to evict them. We let them stay in the premises." Transcript—Complaint to Recover Preference, p. 15.

2. *In re: AIR FLORIDA, INC.,* FINDINGS OF FACT AND CONCLUSIONS OF LAW, July 8, 1985, p. 2.

3. Mr. Falco testified that he actually assisted AIR FLORIDA with this move.

convinced that the bankruptcy judge's finding is clearly erroneous. Bankruptcy Rule 8013. Certainly, in light of Mr. Falco's testimony, the bankruptcy judge's finding that AIR FLORIDA vacated the premises by November, 1982, cannot be said to be clearly erroneous. Consequently, Appellant's first contention on this appeal must fail.

*2. A Property's Mere Availability Without Actual Use or Proof of Benefit Derived Therefrom, Fails to Constitute "New Value" for Purposes of Section 547(c)(4)*

■ Section 547(c)(4) of the Bankruptcy Code provides in pertinent part:

(c) The trustee may not avoid under this section a transfer

.   .   .   .   .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor. . . .

For Section 547(c)(4) to apply, three requirements must be met: a creditor must be extended new value after receiving a preference; the new value extended must be unsecured; and such new value must remain unpaid.[4] *Matter of Bishop,* 17 B.R. 180, 183 (Bankr.N.D.Ga.1982).

■ Section 547(c)(4), commonly referred to as the "subsequent advance rule," serves two vital purposes under the Code. First, by exempting certain transactions from avoidance under the preference provision, it encourages creditors to continue dealing with troubled businesses. *In Re Gold Coast Seed Co.,* 30 B.R. 551, 553 (Bankr. 9th Cir.1983); *Waldschmidt v. Ranier,* 45 B.R. 112, 120 (Bankr.M.D.Tenn. 1984); *In Re Philadelphia Light Supply Co.,* 33 B.R. 734, 739 (Bankr.E.D.Pa.1983).

Second, by limiting the offset permitted a creditor to the new value extended the debtor after a preferential payment, this rule helps effectuate an equitable distribution of the estate's assets amongst the debtor's general creditors.

From the discussion above, it should be apparent that the definition of "new value" is crucial to the proper construction of this statute. "New value," as that term is used in Section 547 of the Code, means

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. Section 547(a)(2).

In applying this definition of new value, courts have consistently focused on whether the debtor's estate has been materially benefitted by the transaction in question. *See In Re Fulghum Const. Corp.,* 45 B.R. 112, 120 (Bankr.M.D.Tenn.1984); *In Re Quality Plastics, Inc.,* 41 B.R. 241, 242 (Bankr.W.D.Mich.1984) (Section 547(c)(4) "insulates from preference attack a transfer to a creditor to the extent that the creditor thereafter replenishes the debtor's estate"); *Matter of Kennesaw Mint, Inc.,* 32 B.R. 799, 804 (Bankr.N.D.Ga.1983). Consistent with this analysis, "[c]ourts have found new value to include such items as use of electricity, providing for a guarantee for a new loan to the debtor, shipment of goods and the use of leased premises." *In Re Fulghum Construction,* 45 B.R. 112, 120 (actual use of rental equipment); *In Re Keydata Corp.,* 37 B.R. 324 (Bankr.D.Mass.1983) (electricity extended); *In Re Thomas W. Garland, Inc., infra* (leased premises).

■ Although actual use of a leased premises has been held sufficient to constitute new value, CHARISMA now, through

---

**4.** The burden is on a creditor to establish that a transfer, determined to be preferential, falls within one of the exceptions listed in Section 547(c) of the Code.

this appeal, endeavors to take this holding one step further. CHARISMA argues that the mere continued availability of the leased premises for AIR FLORIDA's use [5], resulting from CHARISMA's forbearance to repossess its property, constituted "new value" within the meaning of Section 547 of the Code. The bankruptcy judge was unpersuaded by this argument and held to the contrary. For the reasons more fully expounded herein, this Court now affirms.

Although this issue is one of first impression in this district, this Court does not write on a completely clean slate. Several courts have specifically considered whether forbearance, by itself,[6] can constitute new value for purposes of Section 547 of the Code.

In *Matter of Duffy*, 3 B.R. 263 (Bankr.S. D.N.Y.1980), Avis, a creditor, argued that new value was given the debtor when Avis accepted a $400.00 rental payment in exchange for its forbearance from repossessing its leased vehicle. Analyzing these facts under Section 547(a)(2) of the Code, the Court concluded as follows:

> The basic concept underlying bankruptcy legislation, and of particular significance in dealing with preferences is the fundamental goal of equality of distribution. *See* House Report N. 595, 95th Cong., 1st Sess. 177, 178 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.[7] A creditor who gives new value in exchange for the receipt of a payment from the debtor has not depleted the debtor's estate to the detriment of other creditors. In the instant case, a forbearance by Avis from repossessing the rented vehicle does not enhance the value of the debtor's estate. The debtor's continued right to drive the rented vehicle is not an asset of benefit to his creditors that could reasonably offset the diminu-

tion of his estate upon the payment of the $400.

> Indeed, the net effect was that upon the debtor's payment of $400 for an antecedent obligation, Avis extended credit by forebearance from its right to reclaim possession immediately and substituted instead its right to reclaim possession for nonpayment of the debt at some future undetermined date. An obligation substituted for an existing obligation is expressly excluded from the definition of "new value". *See* 11 U.S.C. Section 547(a)(2). While Avis' forbearance from reclaiming possession of the rented vehicle might constitute consideration to support a contract, it is nevertheless not "new value" within the meaning of Code Section 547(c)(1) as defined in Code Section 547(a)(2). Such forbearance was of no economical solace to the creditors of this estate.

*Matter of Duffy*, 3 B.R. at 266; *accord Matter of Lario*, 36 B.R. 582 (Bankr.S.D. Ohio 1983) (lessor's forbearance to exercise its rights under lease did not constitute new value under Section 547(c)(4)).

In the recent decision of *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153 (D.C.Cir.1986), the Court of Appeals for the District of Columbia directly addressed the issue of "whether forbearance by itself can constitute new value." After examining the fundamental concepts underlying the Code in general and the preference provision in particular, the Court of Appeals concluded that forbearance alone cannot constitute new value for purposes of Section 547(c). *Id.* at 1159.

Appellant relies primarily on two cases for support of its position: *In Re Quality Plastics, Inc.*, 41 B.R. 241 (Bankr.W.D. Mich.1984); and *Thomas W. Garland, Inc. v. Nooney Company*, 28 B.R. 87 (Bankr.E. D.Mo.1983).

---

**5.** Appellant contends that AIR FLORIDA had the exclusive right to use, occupy and enjoy the leased property in question until April 1, 1985. Appellant's Brief, p. 9.

**6.** This opinion does not address whether forbearance to pursue available legal remedies cou-

pled with actual use of or benefit derived from leased property may suffice for proving "new value" under Section 547(c)(4).

**7.** *See also Matter of Kennesaw Mint, Inc., supra* at 805.

In *In Re Quality Plastics, Inc.*, the trustee attempted to avoid alleged preferential transfers under two equipment leases. The creditor argued that the debtor's *"continued use* of the leased equipment despite accrual and nonpayment of rent" constituted new value within the meaning of Section 547(c)(4) and therefore he should be permitted an offset. *In Re Quality Plastics, Inc.*, 241 B.R. at 242 (emphasis added). The trustee responded, relying in part on *Matter of Duffy*, that nothing of value had in fact been extended the debtor.

In finding for the creditor, the bankruptcy court specifically distinguished the facts presented in *In Re Quality Plastics, Inc.* from those before the Court in *Matter of Duffy*. "Unlike the situation in *Duffy*, the two machines here at issue were utilized in the debtor's business to produce parts which helped to augment the debtor's estate to the benefit of the other creditors." *Id.* at 243. Clearly, the distinguishing factor for the court in *In Re Quality Plastics, Inc.* was the debtor's exploitation of the leased equipment at issue in that case. *See also In Re Rustia*, 20 B.R. 131, 136 (Bankr.S.D.N.Y.1982) (renewed availability of a line of credit is not the extension of new credit—but, new credit is extended once debtor *actually makes use of* available line of credit).

The second decision relied upon by the Appellant, *In Re Thomas W. Garland, Inc.*, is inapposite to the narrow issue before this Court. The facts in that case do not specify whether or not the debtor continued to actually use or derive some benefit from the leased premises in question—a highly pertinent fact whose absence renders the value of this case to the present discussion minimal, at best.

After due consideration of the arguments made and caselaw cited by counsel, this Court holds that CHARISMA's forbearance to exercise its right to evict AIR FLORIDA under the breached lease agreement did not amount to "new value" within the meaning of Section 547(c)(4). CHARISMA received $11,761.33 of the debtor's money within three months of AIR FLORIDA's filing a petition in bankruptcy. Afterwhich, CHARISMA claims it chose to forbore eviction of the debtor, thereby leaving the premise available for AIR FLORIDA's use and enjoyment. Such forbearance on the part of CHARISMA might have constituted new value had AIR FLORIDA actually stayed and used the leased property.[8] However, such was not the case.

The bankruptcy court found that the debtor vacated the property in question by November, 1982, and thereafter made no further use of the leased premises. Thus, the debtor was placed in the financially precarious position of having to pay rent for property it could not beneficially use. Far from replenishing the estate of the debtor, this lease was and continued to be a financial drain on the estate. Indeed, it is quite possible that the debtor's estate might have suffered a smaller loss if the debtor had been evicted earlier, rather than allowing months of back rent to accrue. *See Matter of Lario*, 36 B.R. at 584.

■ Admittedly, CHARISMA has been financially injured by not having the leased space available in its inventory to relet to other tenants during the pertinent months in question.[9] However, the issue is not the detriment to the landlord/creditor, but rather the Court's focus is upon the augmentation, if any, of the tenant/debtor's estate. *See In Re Fulghum Const. Corp.*,

**8.** Assuming AIR FLORIDA had been successful in subletting the subject premises, the sublessee's use might have been ascribable to the debtor. *See* Appellant's Brief, p. 9. A profitable subleasing arrangement would definitely have been considered an asset of the estate. However, if such had proven to be a losing endeavor, then the Court would have been faced with a question similar to that posed in *In Re Quality Plastics, Inc.* Seeing that AIR FLORIDA was unsuccessful in subletting this property, this issue need not be addressed at this time.

**9.** CHARISMA must accept partial responsibility for this unavailability due to its decision not to pursue its other legal alternative—eviction of AIR FLORIDA for breach of the lease agreement.

45 B.R. at 120 (debtor was enriched by its use of the leased equipment and did not pay for this new value); *In Re Keydata Corporation,* 37 B.R. at 328 (value of the utility service provided debtor may be offset against the preferential payment made); *Thomas W. Garland, Inc.,* 28 B.R. 87, 89 (Bankr.E.D.Mo.1983). Analyzing the facts from this focal point, there is no evidence that CHARISMA gave anything of additional value "that could be regarded as augmenting the estate for the benefit of all creditors so as to offset the [preferential] payments" CHARISMA received. *Matter of Kennesaw Mint, Inc.,* 32 B.R. at 804.

AIR FLORIDA vacated and ceased to make use of the leased premises in question by November of 1982. There is no evidence in the Record that would indicate that AIR FLORIDA received any economical benefit from that leased property after that date. In the absence of some evidence that AIR FLORIDA actually used or derived some benefit from having the opportunity to use the leased premises, there has been no new value conferred. Therefore, it is

ORDERED AND ADJUDGED that the bankruptcy court's determination, that CHARISMA failed to provide new value to AIR FLORIDA after the last preferential transfer, is hereby AFFIRMED.[10]

Furthermore, it is

ORDERED AND ADJUDGED that the Clerk of Court be, and the same is, hereby directed to close the District Court file in this matter.

---

10. In arriving at this decision, this court is fully cognizant of one of the potential adverse consequences this ruling might effect. This holding may induce unsecured lessors to evict early when a debtor appears to be in financial jeopardy. The alternative, however, would be to grant lessor creditors advantages over general creditors that Congress, by providing for avoidance of preferences, sought to preclude. *Id.* at 1159.