In re WORKBOATS NORTHWEST, INC., Debtor.

Ronald G. BROWN, Chapter 7 Trustee, Plaintiff,

v.

Brown H. MORTON and Jeane E. Morton, husband and wife, dba Brown Morton Properties, Defendants.

Bankruptcy No. 95–00369.
Adv. No. A96–08441.

United States Bankruptcy Court, W.D. Washington.

Sept. 27, 1996.

564

Dean A. Messmer, Lasher Holzapfel, Seattle, WA, for plaintiff.

Arthur H. McKean, Aiken St. Louis & Siljeg, Seattle, WA, for defendants.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Bankruptcy Judge.

This matter comes before the Court on cross-motions for summary judgment. The issue is whether a landlord is entitled to set off, as "new value", delinquent rent accruing subsequent to payments which were preferential.

## FACTS

The debtor leased its business premises from the defendants, who are insiders of the debtor. From at least August, 1987, through June, 1990, the parties had a month-to-month arrangement. On June 22, 1990, they executed a formal lease which was extended periodically. The last extension expired on June 30, 1994. The parties did not renegotiate a further extension. Nevertheless, the debtor continued to occupy the premises and pay the same monthly rental of approximately $13,000 as it had previously, plus an additional payment to cover taxes and insurance. The lease provided for rental to be paid in advance on the first day of each month. Rents paid after the tenth day of the month were subject to a late charge.

In 1994, rents for the months of April, May, June, July and August were not paid. However, on August 12, the debtor paid the August rent. The July rent was paid on August 25, and the June rent was paid on September 2. The debtor continued to occupy the premises until it filed this case on January 13, 1995. The debtor did not pay the rent for October or November, but did pay for December and January. The trustee continued to occupy the premises post-filing through April, 1995, for which the defendants have never received payment.

The defendants have submitted a schedule of rent payments it received from the debtor between August, 1987, and December, 1993, and the plaintiffs have completed the schedule through January, 1995. The schedule shows that, during this 102–month period, the debtor paid its rent after the tenth of the month 34 times. Eight times, the debtor paid its rent more than a month after it was due. Four times, the rent went unpaid altogether. According to the defendant, it was an established practice to forbear when necessary to allow the debtor to pay its trade creditors, and it never sent the debtor a

default notice or threatened lease termination or eviction.

## ISSUES

The trustee sued defendants to recover the June, July, and August rental payments as preferential under § 547. The defendant concedes that it received a preference under § 547(b), but asserts the following defenses:

1) All three payments were made in the ordinary course of business, under § 547(c)(2).

2) The payment for August was a contemporaneous exchange for new value under § 547(c)(1).

3) The subsequent unpaid rentals accruing prepetition constitute "subsequent new value" under § 547(c)(4), which may be set off against the preferential payments.

Both sides seek summary judgment on these issues. The Court has already ruled that the August rental payment was made in the ordinary course of business, the rent payments for June and July were not in the ordinary course, and further that none of the payments constituted a contemporaneous exchange. The only issue remaining is whether, and to what extent, the subsequent delinquencies may be set off as "subsequent new value" under § 547(c)(4).

## DISCUSSION

■ Section 547(c)(4) contains an exception to the trustee's power to recover a preference, providing that a preference is not recoverable—

to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4).

■ The key elements of the exception are: 1) the creditor must give unsecured new value; 2) the new value must be given after the preferential transfer; and 3) the new

value may not have been paid for by "an otherwise unavoidable transfer." *In re IRFM, Inc.,* 52 F.3d 228 (9th Cir.1995); *In re PNP Holdings Corp.,* 167 B.R. 619, 629 (Bankr.W.D.Wash.1994). New value is defined in § 547(a)(2) as:

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

■ The policy underlying the subsequent advance rule is to encourage creditors to extend credit to financially troubled entities. *In re Ford,* 98 B.R. 669 (Bankr.D.Vt. 1989). A corollary objective is to promote equality of distribution among creditors. Hence the advance "[m]ust be tangible and actually enhance the worth of the estate so as to offset the reduction in the estate that the transfer has caused." *In re Adelphia Automatic Sprinkler Co.,* 184 B.R. 224, 228 (E.D.Pa.1995). On the other hand, the measure of new value is not whether it in fact makes available additional assets for distribution to creditors, but rather whether it was available to the debtor in the conduct of its business. *Ford, supra* at 679 (citations omitted).

As to the consideration qualifying for the subsequent new value exception,

[It] may include more than goods sold on unsecured credit or money lent. For instance, it also may include the value of insurance coverage provided after the payment of delinquent premiums, the value of leased equipment when the lessor permitted the debtor-lessee to continue using the equipment to produce inventory after default in rental payments, and may include the value of electricity supplied by a utility to the debtor after preferential payments.

Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy,* 38 Vand.L.Rev. 713, 785, 786 (1985). *See, e.g. In re Dick Henley, Inc.,* 45 B.R. 693 (Bankr.M.D.La. 1985) (insurance); *In re Quality Plastics,* 41

B.R. 241 (Bankr.W.D.Mich.1994) (equipment lease); *In re Keydata Corp.*, 37 B.R. 324 (Bankr.D.Mass.1983) (electricity).

Similarly, a majority of courts addressing the subject have also held that a landlord may set off, as new value, delinquent rent accruing subsequent to preferential payments. *In re Southern Technical College, Inc.*, 199 B.R. 46 (Bankr.E.D.Ark.1995); *In re Paula Saker & Co.*, 53 B.R. 630 (Bankr. S.D.N.Y.1985); *In re Garland*, 28 B.R. 87 (Bankr.E.D.Mo.1983). The only circuit court to address the issue expressed the same view but rejected the defense on other grounds. *In re Jet Florida System, Inc.*, 841 F.2d 1082 (11th Cir.1988) (forbearing to evict not new value, because debtor had vacated the premises and made no use of them during the preference period).

The trustee contends that these cases are wrong, because a landlord's refraining to evict a tenant constitutes forbearance, and forbearance cannot constitute new value. In support of his position, the trustee cites *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153 (D.C.Cir.1986), a case involving insurance premium financing. The *Drabkin* Court explained the forbearance rule as follows:

> We think it plain that a payment to an unsecured creditor in return for that creditor's agreement not to force the debtor into bankruptcy can never be treated as new value. Otherwise the preference provisions of the bankruptcy code would be nullified, because all creditors could extract payments within the preference period under that exception.

*Id.* at 1158–59. Clearly this explanation does not describe the landlord-tenant situation. The landlord has not merely forborne from collecting something that was already owed. Rather, it has provided the debtor with premises for a period which had not yet ensued as of the date of the preferential payments. If the debtor in fact made use of the premises during the preference period, it received value that it did not have previously. The *Drabkin* Court itself refused to draw a parallel between the landlord-tenant situation and the facts before it, observing that "[l]andlord-tenant law ... is best treated as *sui generis*." *Id.* at 1158–59, n. 6.

The trustee argues further that the additional months of occupancy cannot constitute *new* value, because the debtor's right to occupy arose when the lease was executed, not after the preferential payments were made. This argument must fail. First, the lease in this case in fact terminated in June, 1994, so that the debtor's continued possession after the preferential payments were made was on a month-to-month basis. Nevertheless, the trustee argues that the debtor already had possession, and that to remove the debtor would require action on the part of the landlord. In support of this position the trustee cites *Matter of Lario*, 36 B.R. 582 (Bankr. S.D.Ohio, W.D.1983). In *Lario*, the debtor had negotiated a sale of its restaurant business, including the premises lease. The landlord agreed to allow the debtor to remain in the premises rent-free and approved a lease assignment in exchange for the debtor's agreement to pay delinquent rents from the sale proceeds. The Court concluded that in allowing the debtor to remain in the premises, the landlord had given the debtor nothing new. Rather, the landlord's right to evict upon default was part of the bargain struck when the lease was executed. Hence not evicting the debtor constituted the exercise of a pre-existing right, not an extension of new value. In exchange, the debtor's obligation to pay rent in a timely fashion was substituted with the obligation to pay an antecedent debt.

*Lario* is distinguishable on the facts, and to the extent it speaks to the application of § 547(c)(4) to leases generally, it goes too far. It is factually distinguishable, because there the debtor did not remain in possession of the leased premises after the preferential payment was made. This is a critical difference, because it is the debtor's continued occupancy that provided the value in *Southern Technical College, supra, Paula Saker, supra,* and *Garland, supra.* Conversely, it was the debtor's lack of continued use that defeated the new value defense in *Jet Florida System.*

The *Lario* Court goes further, however, and states that the lessee's rights to possession are fully matured upon execution of the lease. A better view is expressed in *In re*

*Mindy's,* 17 B.R. 177 (Bankr.S.D.Ohio, E.D. 1982). The *Mindy's* Court noted that leases are defined as executory contracts under the § 365 of the Bankruptcy Code. That is, a lease involves an exchange of rights and obligations by the parties to the lease throughout its term. Hence the debtor's obligation to pay rent accrues as the lease term progresses. This Court concludes that the converse is also true, that is, the debtor's right to possession accrues over time, as long as it is not in default. Hence by permitting the debtor to remain in possession without paying rent, the landlord extends value that did not exist at the time the lease was executed. The trustee's view puts semantics over substance and would defeat the policy embodied in the subsequent new value exception.

Section 547(c)(4) protects a transfer only to the extent of the new value given, and a party asserting the defense must prove the specific measure of value given. *In re Jet Florida System, Inc., supra.* In a landlord-tenant situation, the measure of value that may be set off against preferential payments is the rental value of the property. This was the Court's conclusion in *In re Quality Plastics, Inc., supra,* in which it addressed the value issue in relation to a lease of machinery used in the debtor's business to produce parts. There the trustee argued that the Court could not identify or place a value on the parts produced. The Court likened the lessor to a lender who gave the debtor a sum sufficient to pay the rentals, in which case it deemed the appropriate measure of credit extended to be the amount at which the machines were rented, rather than their productivity. In the present case, the defendants may offset against the preferential payments the full amount of the delinquency accruing after those payments were made.

### CONCLUSION

For the foregoing reasons and based on the authorities cited, the Court concludes:

1. The defendants have established the new value defense to a preferential transfer.

2. Accordingly, the trustee's motion for summary judgment will be denied.

3. The defendants' cross-motion to permit them to offset as new value the full amount of the delinquent rent payments against the preferential payments made by the debtor will be granted.