**In re TRANS AIR, INC. f/k/a Trans Island Airways, Inc., Debtor.**

**CHASE MANHATTAN BANK, N.A., Plaintiff,**

**v.**

**Janice Leigh DENT, A.I.M. Investment Corp. and Trans Air, Inc., Defendants.**

**Bankruptcy No. 86–02525–BKC–SMW. Adv. No. 86–0609–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Oct. 5, 1987.

As Amended Oct. 9, 1987.

William C. Stalions, Fort Lauderdale, Fla., for Janice Leigh Dent.

Arthur Neiwirth, Fort Lauderdale, Fla., for Trustee.

Stephen J. Avrach, Miami Beach, Fla., for A.I.M.

Jay M. Gamberg, Hollywood, Fla., for Banco de Bilbao.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court upon the Cross Claim of the Trustee, War-

ren Martin, against the defendants, Janice Dent and A.I.M. Investment Corp., for recovery of preferential transfers pursuant to 11 U.S.C. §§ 541(a) and 547(b) and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Trans Air, Inc. (the "debtor") filed a Petition for Voluntary Chapter 11 Relief on August 18, 1986 said case being subsequently converted to a Chapter 7 proceeding on December 30, 1986. The debtor maintained a bank account containing ticket proceeds (the "funds") with Chase Manhattan Bank in New York ("Chase"), the interpleader in this case. In early 1986, there was approximately $76,500.00 in the debtor's account at Chase with the defendants, A.I.M. Investment Corp. ("A.I.M.") and Janice Dent, both claiming ownership of a portion of the funds pursuant to assignments from the debtor.

Janice Dent claims $20,500.00 of the funds belong to her by virtue of an assignment from the debtor dated January 11, 1986 to insure and secure lease payments on aircraft being used in the debtor's daily operations. Janice Dent was allegedly managing her husband, James Dent's, assets although she testified that aside from signing the assignment as his agent she never received compensation for her management work nor was she involved with the collections from the debtor on the lease. Mr. Dent and another individual were the actual owners of the aircraft and an ownership management agreement between them and Janice Dent gave her the authority to execute the assignment. Mr. Dent was, at the time of the assignment, the primary person responsible for the day to day business operations of the debtor. The assignment was received by Chase on May 6, 1986 and the funds were transferred to Janice Dent pursuant to a state court order on or about July 19, 1986.

A.I.M. claims $45,000.00 of the funds pursuant to an assignment by the debtor to A.I.M. which was delivered to A.I.M.'s attorney on May 19, 1986 and subsequently to Chase on May 22, 1986. There is no factual dispute as to the substantive validity of the assignment which was given by the debtor to A.I.M. as additional collateral.

To determine the parties' respective rights to the funds, Chase filed a state court interpleader action in June, 1986 against Janice Dent, A.I.M. and the debtor. Subsequent to the debtor filing bankruptcy, the interpleader action was removed to this Court and the trustee adopted the answer filed by the debtor in state court and cross claimed against Janice Dent and A.I.M. in the instant preference action under 11 U.S.C. § 547(b). Additionally, secured creditor Banco de Bilbao intervened in this action with an answer and cross claim against the trustee which were dismissed without prejudice by this Court on May 19, 1987 to allow trial against the other defendants to go forward. This Court ruled that if the trustee proves successful on the preference suits, the funds will be escrowed while the trustee determines the extent and priority of the secured creditor's claim vis-a-vis the estate's interest.

### A.I.M.'s Claim

The trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within ninety days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The only requirement under consideration of the Court is whether the assignment to A.I.M. was perfected within ninety days before the date of the filing of the bankruptcy petition. 11 U.S.C. § 547(b)(4)(A).

A.I.M. contends that because its attorney received the letter assignment at his office on May 19, 1986, the delivery element of an assignment was satisfied and therefore the assignment was perfected outside the ninety day preference period of 11 U.S.C. § 547(b)(4)(A). However, the evidence revealed that the debtor/stakeholder, Chase, did not receive the letter assignment until May 22, 1986 and until that time the funds, from Chase's perspective, belonged to the debtor.

According to Florida's common law, to perfect an assignee's right to receive its interest under an assignment and impose upon a debtor/stakeholder the duty of payment to the assignee there must be notice to the debtor of the assignment. *Boulevard National Bank of Miami v. Air Metal Industries*, 176 So.2d 94, 98 (Fla.1965). This is so because "to stand in the assignor's shoes, the assignee must acquire some 'delivery' or 'possession' of the debt constituting a means of clearly establishing his right to collect." *Boulevard National Bank*, 176 So.2d at 98. Proper notice to the debtor/stakeholder of the assignment "is a manifestation of delivery" and "fixes the accountability of the debtor to the assignee instead of the assignor and enables all involved to deal more safely." *Boulevard National Bank*, 176 So.2d at 98–9.

Until Chase received notification of the assignment, the debtor could have instructed Chase to release the funds to someone other than A.I.M. and Chase would have been bound to do so. The debtor was not fully divested of its control over the funds until the assignment was delivered to Chase making them legally bound to disburse the funds only to A.I.M. *See Guaranty Mortgage and Insurance Co. v. Harris*, 193 So.2d 1, 3 (Fla.1967) (Where assignor assigned same funds to two different assignees the second assignee prevailed since there was no record of the first assignment because the first assignor had not filed a record notice of his assignment). As such, this Court finds that the transfer of the funds occurred on May 22, 1986 when Chase actually received the letter assignment.

Furthermore, the Court finds that the debtor's continued control over the funds indicates a sufficient interest in the funds to make them property of the bankruptcy estate under 11 U.S.C. § 541(a). *Cf. Sapir v. Eli Haddad Corp. (In re Coco)*, 67 B.R. 365, 370 (Bankr.S.D.N.Y.1986) (A debtor clearly loses control over the funds when he deposits them in an escrow account pursuant to court order in favor of a landlord). Therefore, the Court finds that since May 22, 1986 is within ninety days of the date the debtor filed bankruptcy the assignment of the funds is a preferential transfer and is avoidable by the trustee under 11 U.S.C. § 547(b).

### *Janice Dent's Claim*

Janice Dent disputes that the transfer of the funds occurred within the ninety day preference period. The trustee argues that the assignment to Janice Dent, although perfected outside the ninety day preference window, is a preferential transfer pursuant to 11 U.S.C. § 547(b) because, as the wife of James Dent (Mr. Dent being a principal of the debtor), she was an insider under 11 U.S.C. § 101(30)(B)(vi) and subject to the one year preference period.

When a debtor is a corporation, an "insider" includes any "relative of a general partner, director, officer or person in control of the debtor." 11 U.S.C. § 101(30)(B)(vi). James Dent is married to Janice Dent, he was the co-owner of the aircraft involved in the subject lease and he was an officer and solely responsible for the debtor's day to day business operations at the time the assignment was executed with Janice Dent. Based on the foregoing facts, the Court finds Janice Dent is an insider of the debtor under 11 U.S.C. §§ 101(3)(B)(vi) and 547 and, as such, the

preference period within which to avoid the transfer is one year.

■ However, Janice Dent argues that even if she is an insider, the transfer may not be avoided under 11 U.S.C. § 547(c)(1) or, alternatively, 11 U.S.C. § 547(c)(4). The trustee may not avoid a transfer under 11 U.S.C. § 547(c)(4) when it is:

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4) requires three things to occur: "first, the creditor must extend new value after the challenged payment is made to him; second, the new value must be unsecured; and third, the new value must go unpaid." *Remes v. Yeomans (In re Quality Plastics)*, 41 B.R. 241, 242 (Bankr.W.D.Mich.1984). In the instant case, it is undisputed that the lease payments that were due and owing after the assignment was executed remained unsecured and unpaid. The only requirement at issue is whether "new value" was extended by Janice Dent after the assignment was made between she and the debtor.

New value is defined as "money or money's worth in goods, services, or new credit ... but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2). Janice Dent would have this Court find that since she permitted the debtor to continue using the aircraft despite the accrual and nonpayment of rent on the lease and because the aircraft were essential to the debtor's daily operations and thus to the future reorganization of same that she gave "new value" to or for the benefit of the debtor after the alleged preferential transfer of the funds were made to her. *See Remes*, 41 B.R. 241.

In *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1159 (D.C.Cir.1986) the court held that "a payment to an unsecured cred-

itor in return for that creditor's agreement not to force the debtor into bankruptcy can never be treated as new value" and "an agreement by an undersecured creditor to forgo his right to foreclose on collateral could not be treated as new value ..." The *Drabkin* court specifically rejected that forbearance could be treated as new value even though "the collateral that could be repossessed is used in the operation of the business." *Drabkin*, 800 F.2d at 1159. *See also Leasing Service v. Wendel (In re Air Conditioning, Inc.)*, 72 B.R. 657, 662 at footnote 4 (S.D.Fla.1987). The court acknowledged that this rule "may induce undersecured creditors ... to foreclose early when a debtor appears to be in financial jeopardy...." *Drabkin*, 800 F.2d at 1159. However, the court said that any other rule would grant an undersecured creditor more bargaining power and, therefore, an advantage over other general creditors in contravention of the goals of the bankruptcy code. *Drabkin*, 800 F.2d at 1159.

This Court agrees with and therefore adopts the *Drabkin* court's reasoning as being applicable in the case at bar. The instant case is an ideal example of how an undersecured creditor could use possession of the collateral, the aircraft being essential to the debtor's financial well being and reorganization, to pressure the debtor into granting security to the lessor by assignment of the funds. Additionally, in this particular case, since there is an aircraft lease involved, the lessor is already accorded special treatment by the bankruptcy code through 11 U.S.C. § 1110 which grants a debtor air carrier only sixty days after filing bankruptcy to reject or accept and cure any defaults on an aircraft lease. 11 U.S.C. § 1110(a). Based on the foregoing, the Court finds that no new value was given by Janice Dent to the debtor and therefore 11 U.S.C. § 547(c)(4) is inapplicable to prevent avoidance of the assignment by the trustee.

The trustee is also not prevented from avoiding the assignment under 11 U.S.C. § 547(c)(1) which states that a trustee may not avoid a transfer:

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact is a substantially contemporaneous exchange.

The assignment between Janice Dent and the debtor is not a contemporaneous exchange for new value. First, as previously determined, no new value was extended by Janice Dent to the debtor. Second, the assignment was executed to insure and secure payment on a previously existing aircraft lease agreement. The assignment covered antecedent debt and there is no indication that the debtor intended it to be a contemporaneous exchange for new value. Based on the above, the Court finds the trustee is not prevented from avoiding the assignment under 11 U.S.C. § 547(c)(1).

In summary, the Court finds that the assignments to A.I.M. and Janice Dent, respectively, are preferential transfers which are avoidable by the trustee pursuant to 11 U.S.C. § 547(b). A separate Final Judgment of even date has been entered in conformity herewith.