**In re Roger Alan VINARD and Teresa Earlene Vinard.**

**Bankruptcy No. 91–3644–RWV–7.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Aug. 8, 1991.

Thomas J. Kern, Hyatt Legal Services, Indianapolis, Ind., for debtor.

Dale P. Simmons, Vanvaler & Williams, Greenwood, Ind., for Bank.

## ORDER DENYING DEBTORS' MOTION TO AVOID LIEN OF BARGERSVILLE STATE BANK AND PETITION TO ESTABLISH SECURED STATUS OF CREDITOR'S CLAIM, AND DENYING BANK'S MOTION FOR STAY RELIEF AND ABANDONMENT AS MOOT

RICHARD W. VANDIVIER, Bankruptcy Judge.

This matter comes before the Court on the Debtors' Motion to Avoid Lien filed on April 15, 1991, and amended on May 9, 1991, on the Motion to Dismiss, or in the Alternative for Summary Judgment, regarding the Motion to Avoid Lien, filed by Bargersville State Bank ("the Bank") on May 31, 1991, on the Motion to Lift Stay and Abandon Real Property ("Motion for Stay Relief") filed by the Bank on June 3, 1991, and on the Petition to Establish Secured Status of Creditor's Claim ("the Petition to Establish Secured Status") filed by the Debtors on July 1, 1991. The Court now denies the Debtors' Motion to Avoid Lien, the Bank's Motion for Stay Relief and the Debtors' Petition to Establish Secured Status for the reasons below.

According to the Debtors' allegations, the Debtor Roger Vinard ("Vinard") had been in business as R & R Auto Repair and had used the Bank as his financial institution. He sold the business sometime prior to March 1990, and began dabbling in the residential real estate investment business. He then entered into a Loan Agreement, dated March 1, 1990, with the Bank for a $50,000.00 line of credit ("the $50,000.00 Loan"), secured by a second mortgage on the Debtors' home.

Later, Vinard learned that the Bank had "inherited" a troubled used car lot when the owner, whose son worked at the Bank, died. The Bank agreed to finance $125,-000.00 for Vinard to purchase the lot ("the Car Lot Loan") and to provide $200,000.00 to floor plan the vehicles ("the Floor Plan Loan"). There was no appraisal made, but the Bank assured the Debtors that the price for the car lot was fair. The son of the owner made about $22,000.00 on the deal.

On or about May 1, 1990, the Debtors executed documents entitled Loan Agreement and Security Agreement for the Floor Plan Loan, the latter of which referred only to "Accounts, General Intangibles and Inventory" as collateral. The Debtors told the Bank that they did not wish to use their home as security, and the Bank responded that since the home already was subject to a second mortgage, it could not be used as collateral. Sometime later, around May 14, 1990, after Vinard had already drawn down about half the line of credit to purchase vehicles, the Bank submitted a document entitled Promissory Note for the Debtors to sign, which included as collateral both the car lot and the Debtor's home.

On June 27, 1990, the Debtors used the proceeds from one of their investment properties to pay the balance of the $50,-000.00 Loan. The Bank then released a $20,000.00 CD it was holding as collateral. The Debtors believed that this terminated the Bank's second mortgage on their home.

In late October or early November, 1990, the Bank gave the Debtors notice that it was changing the terms of the Floor Plan Loan, requiring the Debtors to pay the $200,000.00 loan in one year. When they were directed to sign new documents to this effect, the Debtors realized for the first time that the Bank intended to look to their home as security for the Floor Plan Loan. The documents stated that the loan was secured by the second mortgage, dated March 1, 1991, on their home.

The Bank's change in its credit terms effectively forced the Debtors to liquidate the business. However, after liquidation, there remained a balance owing on the Floor Plan Loan of about $50,000.00.

The Debtors filed for relief under Chapter 7 of the Bankruptcy Code on April 5, 1991. They contend that the Bank's attempt to secure the Car Lot Loan with their home was a preference within the meaning of 11 U.S.C. section 547(b), which the Debtors are entitled to avoid under 11 U.S.C. section 522(f) because the lien impairs their homestead exemption. They allege that without the second mortgage, there would be about $15,000.00 equity in the home, which they are entitled to claim as exempt.

The Bank contends that section 522(f) has no application to this case and that the transaction at issue was not a voidable preference because the Debtors received value in exchange for the pledge of their property and that the pledge was outside the preference period. The attached affidavit of Mark Lehman, a vice president of the Bank, asserts that the Bank holds a first mortgage, executed in 1987, against the Debtors' home securing a debt currently of about $24,000.00, that the Debtors executed a second mortgage securing a second note on March 1, 1990, that the Debtors executed another note on May 1,

1990, secured by the mortgage on their home, and that the amount due on the last note is now about $50,000.00. Attached as exhibits were some of the documents evidencing the transactions between the parties. They reveal that the mortgage securing the $50,000.00 Loan was executed on March 1, 1990, and contained a provision that the mortgage would constitute a continuing security for all future loans. The note evidencing the Floor Plan Loan was dated May 1, 1991, (though the date of execution is not clearly evident) and referred to real estate, among other items, as collateral. In describing the real estate, reference is made to two attached mortgages, which were, however, not attached to the exhibit. The note then states "The property may be commonly referred to as 8 S. U.S. 31, Whiteland [the car lot location]; 5078 Russell Lane, Greenwood [the address of the Debtors' home]."

The Court agrees that 11 U.S.C. section 522(f) has no application to this case. That section allows a debtor to avoid judicial liens that impair exemptions and certain nonpossessory, nonpurchase-money security interests in certain types of exempt personal property. The lien at issue is not a judicial lien and it is not a security interest in personal property.

In a memorandum filed July 1, 1991, the Debtors contend that the Bank's lien is avoidable as a preference under 11 U.S.C. section 547(b). That section, however, gives avoidance powers only to the trustee. The Debtor may utilize the trustee's unused preference avoidance power only if the transfer sought to be avoided impairs an exemption to which the Debtors would be entitled (which will be assumed for purposes of this opinion), and if the transfer was not a voluntary transfer. *See* 11 U.S.C. section 522(g) and (h). One of the elements of an avoidable preference is that the transfer be made within 90 days before bankruptcy, or one year if the transferee is an insider. *See* 11 U.S.C. section 547(b)(4).

The Debtor contends that their giving the second mortgage on their home was not a voluntary transfer because they never intended to give the Bank their home as

security for the Car Lot Loan. They contend that the transfer was within one year of bankruptcy, being made on the date of the Floor Plan Loan, not the date of the second mortgage, and that the Bank was an insider because of its unusually close relationship with Vinard. Obviously, the Debtors have several difficult hurdles to clear on the way to their goal.

■ "Insider" is defined as including several categories of entities, such as relatives, partners, corporations a debtor controls, none of which applies in this case. *See* 11 U.S.C. section 101(30). The definition, however, has been interpreted as non-exclusive, *see In re Missionary Baptist Foundation of America*, 712 F.2d 206, 210 (5th Cir.1983), but rather to include anyone "who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." *See id.;* H.R.Rep. No. 595, 95th Cong, 1st Sess 312 (1977); S.Rep. No. 989, 95th Cong, 2d Sess 25 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5810, 6269.

■ However, the facts the Debtors have alleged, if proven, would not establish that an "insider" relationship existed between them and the Bank. A bank's financial power over a debtor does not, standing alone, make the bank an insider. *See In re Burner*, 109 B.R. 216, 226 (Bankr.W.D.Tex. 1989). The Debtors' allegations, if true, may establish fraud or bad faith dealing, but not fraud or bad faith dealing *by an insider.* On this basis alone, the Debtors' Motion to Avoid Lien must fail.

■ The underlying problem is that the Debtors misperceive the basis of the relief they seek. Preference recovery is a bankruptcy remedy to ensure relatively equal treatment among similarly situated unsecured creditors. Thus, unsecured creditors who extract payments on antecedent debts on the eve of bankruptcy may be required to turn the payments over to the estate where all unsecured creditors may share equally. The preference period is longer for insiders because of a debtor's presumed heightened inclination to favor such creditors and/or the insider's heightened ability to dictate preferential treatment. Since a trustee is not inclined to recover property a debtor will claim as exempt, the debtor is given limited power to avoid involuntary transfers of exempt property. Fraud or bad faith is not the basis for preference recovery. What the Debtors have instead arguably stated is a state law defense to a foreclosure action, which has nothing necessarily to do with impairing exemptions or preferential pre-bankruptcy transfers.

The trustee submitted, on May 20, 1991, a report of no distribution and statement of abandonment of property, and the Court, by order of June 7, 1991, ordered property of the estate abandoned and provided that creditors with nonavoidable, perfected security interests are granted relief from stay to pursue their valid claims against such property in accordance with applicable law, thus mooting the Bank's Motion for Stay Relief. Because there will be no distribution to creditors, there is no reason for the Court to determine the status of the Bank's claim, and the Court will therefore deny the Debtors' Petition to Establish Secured Status.

In conclusion, the Bank's lien is not subject to avoidance under bankruptcy law. The stay has already been lifted and the Bank is now free to pursue its state law foreclosure remedies. The Debtors are also free to interpose any state law defense they believe they have to such an action. The dispute is not a bankruptcy matter now, but purely one of state law to be decided in an appropriate state forum.

The Court therefore DENIES the Debtors' Motion to Avoid Lien, the Bank's Motion for Stay Relief, and the Debtor's Petition to Establish Secured Status.

SO ORDERED.