**In re Joseph A. TORCISE, Jr., d/b/a Joe Torcise Farms and Tijodee Farms, Debtor.**

**Joseph A. TORCISE, Jr., Plaintiff,**

v.

**Elyse CUNIGAN, Defendant.**

**Bankruptcy No. 89–16287–BKC–AJC.**

**Adv. No. 91–1151–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida.

Oct. 7, 1992.

John L. Britton, Robert C. Gilbert, Fine Jacobson Schwartz, Nash & Block, Miami, Fla., Special Counsel for plaintiff.

Max M. Hagen, No. Miami Beach, Fla., for defendant.

## MEMORANDUM OF OPINION AND ORDER[1]

RANDOLPH BAXTER, Bankruptcy Judge.

In this proceeding the special counsel to the official Creditors Committee (Plaintiff) seeks to avoid certain prepetition transfers on behalf of the estate of Joseph A. Torcise, Jr. (Debtor), pursuant to § 547(b) of the Bankruptcy Code. [11 U.S.C. 547(b)].

Generally, the relevant facts are undisputed and the parties have stipulated to the existence of all required elements to satisfy an avoidable preferential transfer under § 547(b), except for establishing the existence of an "insider" under § 547(b)(4)(B) of the Code. Within the one-year period prior to Torcise filing his voluntary Chapter 11 petition, on November 30, 1989, Elyse Cunigan (Defendant) made or caused to be made three (3) unsecured loans to the Debtor. The Defendant's first unsecured loan was made by the Defendant to Joseph A. Torcise, Jr. and Codelia Torcise in an amount of $100,000.00 on January 23, 1989, with an attendant promissory note being executed by the Debtor on the same date and made payable to the Defendant in an amount equal to the loan. On June 16, 1989, the Debtor delivered a post-dated check to Elyse Cunigan in an amount of $106,123.29, representing the principal loan amount with accrued interest. Subsequently, on July 5, 1989, that check was deposited in the Defendant's personal checking account and was dishonored by her bank due to insufficient funds on the Debtor's account. To date, the Defendant has not been repaid on the January 23, 1989 loan (Testimony, Elyse Cunigan.)

On February 6, 1989, the Defendant, in her capacity as trustee on certain trust accounts for her minor children, made two additional unsecured loans to the Debtor in the amount of $70,000.00 each plus stated interest. Both of those loans were repaid to said trust accounts in the respective amounts of $73,739.73 on June 16, 1989. Respecting those loan repayments, the present adversary proceeding ensued.

With all elements of a preferential transfer having been stipulated to by the parties, except for the presence of an "insider" relationship, the sole issue is whether the Defendant-transferee received the subject loan payments from the Debtor's estate while in the capacity of an insider as that term is defined in § 101(31) of the Bankruptcy Code. 11 U.S.C. 101(31).

 The burden of proof is upon the party alleging that the transfer was made preferentially. In order to sustain that burden, the complainant must prove its case by a preponderance of the evidence. *In re Grogan*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In pertinent part, a transfer is made preferentially pursuant to § 547(b) of the Bankruptcy Code where; (1) there was a prepetition transfer to or for the benefit of a creditor; (2) the transfer was made for or on account of an antecedent debt; (3) the debtor was insolvent at the time of the transfer; (4) the transfer was made within 90 days of the filing of the bankruptcy petition, or was made between 90 days and one year before the petition was filed where the transfer was made to an insider; and (5) the transfer has the effect of allowing the transferee to receive a greater distribution than it would receive in a liquidation case.

As indicated above, the parties have stipulated to all elements of § 547(b), except for whether the Defendant-transferee was an insider. Under § 101(31) of the Code, in relevant part, the term "insider" is statutorily defined as including:

(31)(A) if the debtor is an individual—

---

1. Judge Randolph Baxter, U.S. Bankruptcy Judge, sitting by designation.

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control;

The term insider is further specifically defined under § 101(31) in instances where the debtor is a corporation, a partnership, a municipality, elected official or relative of an elected official, an affiliate or an insider of an affiliate, or a managing agent of the debtor. In the present proceeding, the complainant has not addressed with specificity, which subsection of § 101(31) that it alleges the Defendant served as an insider. Pursuant to the pertinent legislative history, "[An] insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." See HR Rep. No. 595, 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 25 (1978), U.S.Code Cong. & Admin.News, 1978, 5787.

*Analysis*

■ The Defendant conceded that her husband was a Vice–President of Barnett Bank, the Debtor's primary banking institution, during the time of the transactions in question. (Elyse Cunigan, Cross-examination and Affidavit.) Her husband, however, was not a party to the loan transaction or repayment of the loan. Furthermore, all of the parties agree that Barnett Bank had a business relationship with Mr. Torcise for over many years. (Mr. Cunigan, Cross-examination.) The length of the relationship between the Debtor and the Defendant is disputed, however, with Mrs. Cunigan testifying that she had known Mr. Torcise for only a few years. On the other hand, Mr. Torcise testified that their acquaintance began when the Defendant was a child and through his association with her father. Regardless of the length of the relationship between the Debtor and the Defendant, the definition of insider does not encompass an individual who is merely a friend or associate of a debtor nor an

officer of the debtor's banking institution nor the spouse of an officer at the debtor's bank. *See,* 11 U.S.C. 101(31)(A)(i-v) (1989); *In re Hartley,* 52 B.R. 679 (Bankr. N.D.Ohio 1985). In this case, the Debtor filed an individual voluntary Chapter 11 petition, doing business through unincorporated sole proprietorships known as Joe Torcise Farms and/or Tijodee Farms. Applying the statutory definition of insider pursuant to § 101(31)(A) to this matter as it respects the Defendant Elyse Cunigan, the evidence adduced does not establish that she is: (1) a relative or general partner of the Debtor; (2) a partnership in which the Debtor is a general partner; (3) a general partner of the Debtor; or (4) a corporation of which the Debtor is a director, officer, or person in control. Thusly, the Defendant is not an insider for purposes of this case, and the one year preferential period is inapplicable.

■ Pursuant to the relevant case law, spouses can be found to be insiders based upon their marital relationship with an insider status. *See, In re Trans Air, Inc.,* 78 B.R. 351 (Bankr.S.D.Fla.1987). A party may be found to be an insider based upon her ability to control the debtor. *See,* 101(30)(B)(vi). The Court held:

> When a debtor is a corporation, an "insider" includes any "relative of a general partner, director, officer or person in control of the debtor." 11 U.S.C. § 101(30)(B)(vi). James Dent is married to Janice Dent, he was the co-owner of the aircraft involved in the subject lease and he was an officer and solely responsible for the debtor's day to day business operations at the time the assignment was executed with Janice Dent. Based on the foregoing facts, the Court finds Janice Dent is an insider of the debtor under 11 U.S.C. §§ 101(3)(B)(vi) and 547 and, as such, the preference period within which to avoid the transfer is one year. *In re Trans Air, Inc.,* 78 B.R. at 351 (Bankr.S.D.Fla.1987).

This Court finds no evidence which illustrates that the Defendant, Elyse Cunigan had a position of control with respect to the Debtor. Her spouse, although a Bank em-

ployee, is not an insider on the subject transaction, as he was not involved in the transaction. By statutory definition, Mr. Cunigan is not an insider and neither is Mrs. Cunigan. Mere knowledge of a loan transaction, without any actual participation in that loan transaction, does not necessarily establish an aura of insidership upon the individual having such knowledge. Hence, the transfers between the Defendant and the Debtor during the year prior to the Debtor's filing were not preferential. Furthermore, the Defendant testified credibly that she began loaning the Debtor money because she had heard about his financial situation through unnamed third parties and not through her husband. The fact that Mr. Torcise had begun accepting loans from private individuals was common knowledge. (See the testimony of James Kelly and Marvin Riff.) In brief, there has been no demonstration of a control feature by the Defendant, vis-a-vis, her husband relative to the Debtor's estate and Barnett Bank.

In the instant case the definition of insider cannot be applied to the Defendant. First, it was never established by the Debtor that Mr. Cunigan, an Officer of Barnett Bank, was in control of the Debtor. Mr. Cunigan testified credibly regarding his limited involvement in the Debtor's business relationship with the bank. (Mr. Cunigan, Cross-examination and Affidavit.)

■ Other bankruptcy courts have ruled on whether a bank could be an insider. These courts have held that in order for a bank or its officers to be insiders it must have considerable control or a high likelihood of control over the debtor. In the matter at bar, that demonstration has not been made. Mere financial power over the Debtor does not necessarily impute insider status to the lender. *See, In re Practical Inv. Corp.,* 95 B.R. 935, 941 (Bankr. E.D.Va.1989); *In re Vinard,* 133 B.R. 217, 220 (Bankr.S.D.Ind.1991); *In re Burner,* 109 B.R. 216, 226 (Bankr.W.D.Texas 1989); The *Burner* Court held:

> [t]he control element necessary to qualify a bank as an insider must be such that the debtor was the mere alter ego or

instrumentality of the bank, in that the bank was exercising such control and influence over the debtor that their transactions were not at arm's length. As a result, there must be credible evidence presented to demonstrate that the bank held some form of unreasonable control over the debtor. *In re Burner,* 109 B.R. 216, 226 (Bankr.W.D.Texas 1989).

Herein, there has been no showing that Barnett Bank nor its Vice–President, David Cunigan, held some form of unreasonable control over the Debtor. Barnett Bank was the Debtor's primary lender, and the Debtor had a line of credit with the Bank. The Debtor, however, never proved that the Debtor's farm was merely an alter-ego of the Bank. In fact, there was no evidence or testimony offered to show the Bank's or Mr. Cunigan's control over the Debtor.

### *Conclusion*

Accordingly, the one-year preferential period is not applicable, the Defendant is not an insider, and the applicable requirements of section 547(b) have not been satisfied. Therefore the Debtor's complaint, as amended, is dismissed, with each party to bear the respective costs.

IT IS SO ORDERED.